## TEXAS CO. et al. v. McAFEE et al.

### (Circuit Court of Appeals, Fifth Circuit. May 27, 1924.)

### No. 4191.

1. **Patents ⟨key⟩114—Decision of Court of Appeals as to priority of invention controlling unless overcome by clear evidence.**

The decision of the Court of Appeals of the District of Columbia on the question of fact of priority of invention is controlling, unless the contrary is established by evidence which carries thorough conviction.

2. **Patents ⟨key⟩114—Independent concurrent findings of two courts as to priority of invention reversible only for obvious error or mistake.**

A decision of the Court of Appeals of the District of Columbia on the question of priority of invention between two inventors, concurred in by a District Court after an independent hearing on oral testimony, will not be reversed, unless for some obvious error in the application of the law, or some serious and important mistake in consideration of the facts.

3. **Patents ⟨key⟩328—1,277,329, for method of refining mineral lubricating oil, held valid.**

The McAfee patent, No. 1,277,329, for method of purifying high-boiling constituents of petroleum, *held* valid as against the claim of prior invention by George W. Gray.

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Suit in equity by The Texas Company and George W. Gray against Almer McDuffie McAfee and the Gulf Refining Company. Decree for defendants, and complainants appeal. Affirmed:

R. J. Dearborn, of New York City, C. B. Ames, of Oklahoma City, Okl., and F. D. Minor, of Beaumont, Tex., for appellants.

D. Edward Greer, of Houston, Tex., R. L. Batts, of Austin, Tex., and Melville Church and Alfred M. Houghton, both of Washington, D. C., for appellees.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

WALKER, Circuit Judge. On September 16, 1913, the appellant George William Gray filed an application for a patent. On September 30, 1913, the appellee Almer McDuffie McAfee filed a similar application. The applications were numbered 789,957 and 792,617, respectively. Each of the applications claimed invention relating to the refining or purifying of high-boiling constituents of petroleum, particularly

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lubricating oil. An interference between the two applications was declared. In the interference proceeding the following were stated to be the subjects of the question of priority of invention:

"1. The method of purifying high-boiling constituents of petroleum, which consists in heating the same in the presence of aluminum chloride to a temperature of from about 150° F. to about 212° F. for a period of from two to six hours.

"2. The method of purifying high-boiling constituents of petroleum, which consists in heating the same in the presence of aluminum chloride to a temperature of from about 150° F. to 212° F. for a period of from two to six hours, accompanied by agitation.

"3. In the purification of high-boiling mineral lubricating oils, the process which comprises heating such oil with dry aluminum chloride to a temperature around 150° F.

"4. In the purification of high-boiling mineral lubricating oils, the process which comprises heating such oil with dry aluminum chloride to a temperature around 150° F., allowing the oil to cool, and separating the oil from the chloride sludge.

"5. The method of purifying high-boiling constituents of petroleum, which comprises heating the same in the presence of aluminum chloride while vigorously agitating to a temperature around 150° F. for a period of several hours.

"6. The process of bleaching, stabilizing, and purifying lubricating oils, which comprises producing an internal condensation attended with deposition of carbon and saturation of unsaturated groups by warming such oil with a catalytic chemical and thereafter treating the oil with sulphuric acid.

"7. The process of bleaching, stabilizing, and purifying lubricating oils, which comprises producing an internal condensation attended with deposition of carbon and saturation of unsaturated groups by warming such oil with aluminum chloride and thereafter treating such oil with aluminum chloride, and thereafter treating the oil with sulphuric acid."

On the issues so raised, the Examiner of Interferences, after considering the evidence adduced by both parties, awarded priority to Gray. On an appeal from that decision, the Board of Examiners in Chief awarded priority to McAfee. On an appeal from the last-mentioned decision, the Assistant Commissioner of Patents decided in favor of Gray. As authorized by statute (U. S. Comp. Stat. §§ 9456–9459), McAfee appealed from the last-mentioned decision to the Court of Appeals of the District of Columbia. That court decided in favor of McAfee, awarding him priority as to all the claims in issue. McAfee v. Gray, 47 App. D. C. 237.

As authorized by R. S. § 4915 (Comp. St. § 9460), Gray and his assignee, the Texas Company, filed the bill in equity in this case, setting up the claim that Gray was the first, original, and sole inventor of the inventions described in the several above set out counts in the interference proceeding, and that his said assignee was entitled to receive letters patent in pursuance of his above-mentioned application. The appellees, McAfee and his assignee, the Gulf Refining Company, by their answer to the bill, put in issue its allegations as to Gray being the inventor or discoverer of the inventions mentioned, and alleged that McAfee was the first, sole, and original inventor or discoverer thereof. On submission of the cause on the pleadings and the evidence adduced, a decree dismissing the bill was rendered. The appeal is from that decree.

Both Gray and McAfee are chemists by profession, and both were in the service of the Texas Company at the time of the occurrences upon which their respective claims are based. In October, 1912, McAfee was transferred from the Texas Company's laboratory at Bayonne to its refinery at Port Arthur, Tex. He reported to and received instructions from Gray, who was stationed at Houston, Tex. The work to which McAfee was assigned by Gray had for its object the increasing of the yield of gasoline from petroleum. While that work was in progress, Gray and McAfee communicated with each other in regard to it, sometimes in interviews, but mostly by correspondence. Each of them claimed that he made the inventions in question while that work was in progress. Gray claimed that the conception expressed in the above set out counts 1, 2, 3, 4, and 5 in the interference proceeding came to him on February 4, 1913, and that the plan of the invention was disclosed in a letter he wrote and sent to McAfee on February 7, 1913. McAfee contended that, prior to both the just-mentioned dates, he had the conception of the invention and put it into practice and disclosed it. Except as otherwise stated below, the conflicting claims herein discussed are the just mentioned ones, and not those with reference to the processes described in the above set out counts 6 and 7, each of which involves the use of sulphuric acid.

[1] From the beginning of the contest between Gray and McAfee the question at issue has been that of priority of invention as to the matters stated in the above set out counts in the interference proceeding. The record plainly indicates that each of the officials and tribunals successively called on to pass on the conflicting claims considered the result to be dependent upon conclusions of fact based on evidence adduced, and that their varying determinations are not attributable to differences as to questions of law. The controlling question in the case is essentially one of fact, namely: Which claimant first conceived and disclosed the process which is the subject of dispute? The action of the Court of Appeals of the District of Columbia was the result of its conclusion from the evidence before it that the process in question was first conceived, disclosed, and put into practice by McAfee. It is well settled that the decision of that tribunal—

"must be accepted as controlling, upon that question of fact, in any subsequent suit between the same parties, unless the contrary is established by testimony which, in character and amount, carries thorough conviction." Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657; Gold v. Newton, 254 Fed. 824, 166 C. C. A. 270; United Shoe Machinery Corporation v. Muther, (C. C. A.) 288 Fed. 283.

[2] In the court below there was some evidence in addition to what was before the Court of Appeals. We do not think that the new evidence produced had the effect of materially changing the record that was before the Court of Appeals. The testimony of the rival claimants was before each of those tribunals. That testimony is the principal source of information as to the occurrences which are relied on by the contending parties as evidencing the making and disclosing of invention. The purpose of most of the other evidence produced was either to corroborate the testimony in behalf of the party offering it

or to lessen the probative weight of that offered by the opposing party. That each of those tribunals had before it evidence supporting the conclusions of fact reached by it is not fairly open to dispute. The conclusion of the court below that McAfee was the prior inventor of the method in question was supported by his testimony, given orally in the presence of the court, and corroborated in material respects by other testimony similarly given, to the effect that some time before February 4, 1913, he conceived, disclosed, and put into practice the process in question.

It is not claimed that Gray had a conception of that process prior to the just mentioned date. Though the evidence relied on by the appellants be regarded as satisfactory proof that Gray, independently and without suggestion from McAfee, made and disclosed the discovery at the time indicated by that evidence, a decision adverse to the appellants on the issues tendered by their bill cannot properly be reversed, without setting aside the court's finding to the effect that prior to February 4, 1913, McAfee conceived, put into practice, and disclosed the process in question. We are of opinion that the record by no means warrants this court in reversing the decree appealed from on the ground that a conclusion contrary to that of the Court of Appeals was established by evidence which, in character and amount, carries thorough conviction. Furthermore, the court's findings of fact were made under circumstances which give additional weight to the presumption ordinarily indulged by an appellate court in favor of findings of a trial court which are supported by evidence. Here we have successive and concurrent findings of two courts in the same case, each of those findings being supported by evidence, and the findings now under review involving the passing on the credence to be given to oral testimony delivered in the court's presence. Findings having such a history are to be taken by this court as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand. Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649; 4 Corpus Juris, 894, 897.

[3] In behalf of the appellants it is contended that the court's conclusion that McAfee was entitled to priority was vitiated by its failure to recognize the main feature of the process in question. In their behalf it is insisted that what is referred to as the flash point test was the essence of the invention, and that the court was in error in failing to make the result depend on a finding as to which claimant first disclosed to another the requirement that the oil dealt with be subjected to flash or fire tests. When oil is heated, it emits flashes or fire upon the temperature to which it is subjected becoming high enough to cause a reaction resulting in the breaking down or decomposition of its constituents. Methods, called flash or fire tests, for discovering the emission of flashes or fire from oil as it is heated, are familiar to chemists. The purification or refining of oil is evidenced by a change, a brightening, of its color. Flash or fire tests are resorted to for determining whether a change of color effected is or is not accompanied by a break-

ing down or decomposition of the constituents of the oil. The use of such a test is a means of determining the value or success of the method or process used to bring about the desired change in the color of oil. But the application of such a test cannot properly be regarded as a part of the method or process adopted for purifying oil, when no mention of such test is made in the authentic description of such method or process.

The claim made by the bill in this case is that Gray was entitled to priority as the inventor of the method or process in question of purifying a designated kind of oil. The slightly varying above set out descriptions of that method or process show that it consists exclusively of (1) heating the designated kind of oil (2) in the presence of dry aluminum chloride (3) to a stated temperature (4) for a stated period of time, and (5) agitating as indicated. So far as appears, at no stage of the controversy has the correctness of the above mentioned description of the subject of the issue of priority been questioned. That description does not indicate that the use or application of any test is a part of the method or process in question. The bill tendered no issue as to priority in the disclosure of a requirement that the oil dealt with be subjected to a flash or fire test. No such issue was raised by the pleadings. The decision of the case cannot properly be made to turn upon the question of priority in disclosing a means of testing oil subjected to the process mentioned. The court's conclusion, as indicated by the memorandum opinion rendered, was to the effect that the method or process in question for purifying the kind of oil mentioned without breaking down or destroying its constituents was conceived, put into practice, and disclosed by McAfee before that method or process was discovered by Gray. That conclusion is not subject to be set aside on the ground that the record does not show that the court specifically passed on a question which was not involved in the issues in the case. In our opinion the record does not show that the court misconceived the issues in the case, or that its action was influenced by an error of law.

As to the court's conclusion with reference to the method or process which involves the use of sulphuric acid, it is enough to say that the evidence warranted a decision adverse to the claim that as to that method or process Gray was entitled to priority.

The record shows no reversible error. The decree is affirmed.