## TEXAS CO. v. GULF REFINING CO.

Circuit Court of Appeals, Fifth Circuit. May 23, 1928.

Rehearing Denied June 29, 1928.

No. 4948.

1. **Master and servant ⪼62—Employer is beneficial owner of invention or discovery by employee, doing what he was employed and paid to do.**

If, in making invention or discovery, employee does what he was employed and paid by employer to do, employer was beneficial owner of invention or discovery.

2. **Master and servant ⪼62—Independent invention by employee belongs to inventor, though employer may be entitled to shop right or license to use invention.**

An independent invention, made by one while acting as another's employee, not due to any suggestion made by employer, belongs to the inventor, though employer may be entitled to a shop right or license to use invention, because of inventor making use of tools or facilities in perfecting invention and putting it into practice.

3. **Estoppel ⪼68(2)—Employer's persistent denial during years of litigation that employee invented process during employment estopped employer to thereafter assert beneficial ownership.**

Where employer during years of litigation persistently denied that employee made invention, and based its right to beneficial ownership therein on claim of invention by another employee, it was thereafter estopped to assert and enforce claim of beneficial ownership, because invention was made while inventor was in its employ.

4. **Estoppel ⪼68(2)—Litigant, asserting particular claim with knowledge of fact, cannot afterwards assume position inconsistent therewith, to prejudice of adversary.**

Party, who in litigation with his adversary has with knowledge of facts asserted a particular claim, title, or right, cannot afterwards assume a position inconsistent with such claim,

to prejudice of adversary acting in reliance on such claim being as previously made, being estopped to contradict own representation by giving same thing another aspect in litigation with same adversary.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit by the Texas Company against the Gulf Refining Company. Decree for defendant (13 F.[2d] 873), and plaintiff appeals. Affirmed.

C. R. Wharton, of Houston, Tex., Livingston Gifford, of New York City, and Brady Cole, of Houston, Tex. (Hiram M. Garwood, of Houston, Tex., R. J. Dearborn, of New York City, J. A. McNair, of Houston, Tex., Gifford & Scull, of New York City, and Baker, Botts, Parker & Garwood, of Houston, Tex., on the brief), for appellant.

John E. Green, Jr., and D. Edward Greer, both of Houston, Tex., and Alfred M. Houghton and Melville Church, both of Washington, D. C. (H. L. Stone, Jr., of Pittsburgh, Pa., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The appellant, the Texas Company, filed on September 4, 1925, its bill in equity against the appellee, Gulf Refining Company, charging the infringement of patent No. 1,424,574 for a process for converting, by the use of aluminum chloride, high-boiling petroleum oils into low-boiling products, including gasoline, which patent was applied for September 13, 1913, and was issued August 1, 1922, to appellee, as assignee of Almer M. McAfee. The averments of the bill show that appellant's claim of beneficial ownership of the patent mentioned was based on allegations to the effect that, at the time of the making of the discovery or invention protected by the patent, McAfee was an employee of the appellant under a contract by the express or implied terms of which the appellant was entitled to the results of his work as such employee, including any invention made by him during the period of his employment, or, in the alternative, if there was no express or implied agreement as to appellant being the owner of such an invention or discovery, McAfee's employment by appellant, by reason of its nature and character, was such that he held in trust for appellant any invention he made, while engaged in such employment, affecting the problem of producing gasoline from petroleum.

The appellee's answer to the bill put in issue its allegations as to express or implied terms of the contract of employment between appellant and McAfee being such that appellant was entitled to the benefit of the discovery or invention protected by the patent, and as to the nature and character of that contract being such that McAfee held in trust for appellant the invention or discovery protected by the patent, and the answer set up, in addition to other grounds of defense stated, that appellant was estopped to maintain the claim asserted by its bill, and lost the right to maintain that claim by long delay, under circumstances mentioned below, in asserting it. The following statement of facts disclosed by the record indicates what was relied on by the appellee to sustain the defenses it set up to the claim asserted by the bill:

McAfee became an employee of appellant soon after he obtained at Columbia University, in the spring of 1911, the Doctor of Philosophy degree in chemistry. For some time he was engaged in routine testing of petroleum and greases at Bayonne, N. J. After making several requests to be transferred to appellant's laboratory at Port Arthur, Tex., he was transferred to that laboratory in the latter part of October, 1912. At and prior to that time G. W. Gray, a chemist, was employed by appellant; his position being superior to that of McAfee, who was subject to Gray's orders as to chemical work to be done. Pursuant to Gray's orders McAfee engaged in experiments and investigations in the laboratory at Port Arthur. In December, 1912, McAfee informed Gray of the result of experiments made by the former, which involved the use of aluminum chloride. In January, 1913, Gray, at the expense of appellant, applied for a patent for a process for making gasoline by the use of aluminum chloride. After McAfee learned of that application he protested to Gray as to his (McAfee's) name not being included in the application. Subsequently McAfee complained to Mr. Holmes, vice president of appellant and manager of its refining department, as to Gray being recognized as the inventor of the process for making gasoline by the use of aluminum chloride, with the result that McAfee obtained no recognition by his employer of his claim in that regard, or of his claim to another invention which was adjudged to be his in a suit in which appellant was his adversary. Texas Co. v. McAfee (C. C. A.) 299 F. 718.

Soon thereafter McAfee resigned his position with appellant, became an employee

. .

of the appellee, assigned to appellee his rights to the invention protected by the patent, and made his application for the patent. The appellee paid the expenses of that application and of the contest which followed the making of it. In August, 1916, patents were issued to Gray in pursuance of his applications filed in January, 1913. In October, 1917, the Patent Office declared an interference between McAfee's application and the patents issued to Gray. The interference proceeding resulted in a contest which was waged for more than four years, the real contestants being the appellant on one side and the appellee on the other, that contest being conducted by attorneys employed by the appellant and the appellee, respectively, and the expenses of the contest being borne by those corporations, one of them being the owner of Gray's claim and the other the owner of McAfee's claim. Results of that contest were: The Examiner of Interferences decided that Gray was the inventor of the process; on appeal from that decision the Examiners in Chief decided that McAfee was the inventor; on appeal from that decision the Commissioner of Patents decided in favor of McAfee's claim; on appellant's appeal from that decision to the Court of Appeals of the District of Columbia, that court, on March 22, 1922,[1] decided that McAfee was the inventor of the process, and in pursuance of that decision the patent, on August 1, 1922, was issued to appellee as assignee of McAfee.

Throughout that contest the appellant urged the contention that Gray was the inventor of the process, and that McAfee was not. In that contest the appellant made and introduced evidence in support of the contentions that, before McAfee came to Port Arthur, Gray had conceived the idea or plan of the invention, and that the task which was assigned to McAfee was that of making experiments for the purpose of determining the cost of producing gasoline by the process already discovered by Gray, and whether that process was or was not commercially useful or profitable. At no time throughout the period of that contest did appellant make the claim that, if McAfee was the discoverer or inventor of the process in question, appellant was the equitable owner of the invention, because of McAfee's relation to it as an employee at the time the invention or discovery was made. That claim was never made by appellant until it filed a suit in a Texas state court in October, 1924. Throughout the period of the contest which preceded the issue of the patent to appellee as assignee,

and after the issue of the patent, and prior to October, 1924, appellee was spending large sums of money in installing machinery for the production of gasoline by the process in question, and appellant was aware of such expenditures.

Instead of appellant, at any time prior to October, 1924, making any claim that, if the invention was McAfee's, it was entitled to that invention because of McAfee's relation to it at the time the invention was made, appellant's president, in a letter addressed to appellee's president on June 29, 1920 (which was admitted, not for the purpose of proving the suggestion of compromise made therein, but to prove statements of fact contained therein), stated: "In making this suggestion, I am not unmindful of the fact that, even if both of the pending cases are decided adversely to the Texas Company, it will, nevertheless, retain a shop right or nonexclusive license under the McAfee patents, inasmuch as McAfee's work was done while he was in the Texas Company's employ."

As to the kind of work in which McAfee was engaged at the time of his discovery of the patented process, the evidence was conflicting. One phase of the evidence was to the effect that the task assigned to McAfee after he came to Port Arthur was that of making investigations and experiments, with the object of solving the problem of increasing the yield of gasoline from petroleum. Another phase of the evidence was to the effect that the task assigned by Gray to McAfee was that of conducting experiments in "cracking and hydrogenerating"—the cracking of hydrocarbons by means of heat and pressure and the hydrogenerating of fatty oils by means of nickel or other catalyst.

[1-4] The claim asserted by appellant was that in equity it was the owner of the invention or discovery in question, because of the inventor's relation to it as its employee at the time the patented process was discovered. If, in making that invention or discovery, McAfee did what he was employed and paid by appellant to do, appellant was the beneficial owner of the invention or discovery. Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033. But the mere fact that McAfee was an employee at the time he discovered the patented process did not make his employer the owner of that process. An independent invention, made by one while acting as another's employee, not due to any suggestion made by the employer, belongs to the inventor, though the employer may be entitled to a shop right or license to use the

invention because of the inventor making use of his employer's tools or facilities in perfecting the invention and putting it into practice. Union Paper Collar Co. v. Van Deusen, 23 Wal. 530, 23 L. Ed. 128; Gill v. United States, 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480; Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667.

A phase of the evidence supported the conclusion that the circumstances attending the making by McAfee of the invention or discovery in question were such that appellant was not entitled to the beneficial ownership of that invention or discovery. But, whether the appellant was or was not entitled to maintain the claim of equitable ownership asserted by the bill in this case, we are of opinion that a result of its conduct prior to the institution of this suit was to deprive it of the right to maintain the claim asserted by the suit. Throughout the long period of the contest which preceded the issue of the patent the appellant based its claim of right to the process for which a patent was sought on the grounds that Gray was the inventor of the process and appellant was the assignee of Gray. While the determination of that contest as to who was entitled to be the patentee turned on the question of priority of invention as between Gray and McAfee, it was quite apparent that the real object of each of the actual contestants was to obtain for itself the benefit of the monopoly to be evidenced by the grant of a patent for the process in question.

The circumstances of the long contest made it manifest that what influenced appellee to engage in that contest, and to incur the expenses of litigation and of preparation for making use of the process in controversy, was the belief that McAfee was the inventor of that process, and that the grant of the patent to appellee as McAfee's assignee would secure to appellee the exclusive right to that process. It is unbelievable that appellee would have incurred the trouble and expense involved in prosecuting that contest, and preparing to continue to make use of the process sought to be patented, if appellee had been apprized of the fact that, because of the relations of both Gray and McAfee to appellant as the latter's employees, appellant was entitled to the beneficial ownership of that process, whether the inventor or discoverer of it was Gray or McAfee. The appellant's conduct from the beginning and throughout the period of the litigation of the question, as to who was entitled to the patent, was calculated to lead appellee to

conclude that a result of its succeeding in the litigation in regard to the patent would be its beneficial ownership of the patented process.

The above set out extract from a letter of appellant's president to appellee's president amounted to an admission or representation by appellant that, in the event of a decision adverse to it of the litigation as to the patent, the extent of its interest in the process in question would be a shop right or nonexclusive license to use that process. A party, who in litigation with his adversary has, with knowledge of the facts, asserted a particular claim, title, or right, cannot afterward assume a position inconsistent with such claim, to the prejudice of the same adversary, who has acted in reliance on such claim being as it was previously made; in other words, a party who, for the purpose of maintaining his position in litigation, has deliberately represented a thing in one respect, is estopped to contradict his own representation by giving the same thing another aspect in litigation with the same adversary as to the same subject-matter. Ohio & Miss. Ry. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Jefferson Standard Life Ins. Co. v. Wilson (C. C. A.) 260 F. 593; 21 C. J. 1202.

Appellant's conduct amounted to a representation that its claim, asserting ownership of the invention or discovery in question, was based, not on the existence at the time the invention or discovery was made of the relation of employer and employee between it and the inventor or discoverer, but on the claim that Gray was the inventor or discoverer, and that it was Gray's assignee. Long before the litigation as to the patent began the appellant was aware that McAfee claimed to be the inventor of the patented process. From the beginning appellant had knowledge of the facts upon which it bases the claim asserted in this suit. Notwithstanding its possession of that knowledge, for more than nine years it refrained from making the claim now asserted, in the meantime so conducting itself as to conceal from appellee even the probability or possibility of such a claim being made, though, from the time appellant was first informed that McAfee claimed to be the inventor or discoverer of the process in question, it was open to appellant to assert its equitable ownership of that invention or discovery, and to compel the transfer to itself of the right thereto before the patent was issued. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504; Hendrie v. Sayles, 98 U. S. 546, 25 L. Ed. 176; Standard Parts v. Peck, supra.

The record fully justifies the conclusions

that appellee would not have incurred the trouble and expense of securing a decision sustaining its contention in the litigation resulting in the issue of the patent in question, if appellee had known, before that litigation was begun, or while it was pending, that by reason of the existence of the right asserted by appellant in this suit no substantial benefit would accrue to appellee from that decision, and that appellant's delay in asserting the claim which it now asserts was calculated to mislead appellee into incurring that trouble and expense, in the belief, justified by appellant's conduct, that, if McAfee was the inventor of the process in question, appellee as his assignee was the beneficial owner of that process. It does not appear from the record that, while the litigation as to priority of invention was pending, any authorized representative of the appellant had in mind the idea that, because of McAfee's relation to appellant when the invention was made, appellant was the beneficial owner of that invention, if McAfee, and not Gray, was the inventor. The circumstances of the failure of appellant, while that litigation was proceeding, to set up that it was the owner of the invention if McAfee was the inventor, are enough to indicate the improbability of the appellant then intending to base a claim of ownership on the ground relied on in this suit.

It reasonably may be inferred or supposed that, if appellant or its authorized representative or representatives then believed that such a claim was sustainable, appellant would, instead of continuing to contest the claim of appellee that McAfee was the inventor, have set up the claim now made and offered evidence to support it, for the purpose of bringing to an end the then pending litigation by demonstrating its futility, so far as the adverse parties in charge of that litigation were concerned, by reason of the existence of a state of facts making it a matter of indifference to appellant whether Gray or McAfee was the inventor, and having the effect of depriving the appellee of any substantial benefit from a decision sustaining its contention that McAfee was the inventor. The circumstances of appellant's delay in disclosing the existence of the right now asserted were such that that delay had the effect of a concealment calculated to influence appellee to change its position in a way that was to its detriment, if the decision it was seeking to bring about could result in no material benefit to appellee.

For reasons above indicated, we are of opinion that appellant's delay, in the circumstances disclosed, in making such claim as the one it seeks to enforce in this suit, had the effect of estopping it to assert and enforce that claim against appellee.

The decree is affirmed.