USLIFE CORPORATION, et
al., Plaintiffs,

v.

U.S. LIFE INSURANCE COMPANY,
Defendant.

Civ. A. No. CA3–82–1456D.

United States District Court,
N.D. Texas,
Dallas Division.

April 5, 1983.

Dudley R. Dobie, Jr., Larry C. Jones, Houston, Tex., Curtis L. Frisbie, Jr., William G. Whitehill, Dallas, Tex., for plaintiffs.

Michael Lowenberg, Michael P. Lynn, Raymond E. White, Robert B. Luther, Dallas, Tex., for defendant.

## ORDER

ROBERT M. HILL, District Judge.

This matter comes before the Court upon the defendant U.S. Life Insurance Company's motions to dismiss and to preclude testimony. In this action, plaintiffs USLIFE Corporation et al. have alleged claims of service mark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.,* and under state common law. The defendant has presented three grounds upon which it has asserted that some or all of the claims against it should be dismissed. First, defendant contends that plaintiffs are judicially estopped from maintaining the position that there is a likelihood of confusion between its service mark and the name of the defendant, because it previously maintained a contrary position in a separate litigation before the Texas Board of Insurance and the Texas courts. Second, defendant argues that the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.,* precludes the application of plaintiffs' Lanham Act claims. Third, defendants asks this Court, as a matter of sound equitable discretion, to dismiss this action under the abstention doctrine announced in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). For the reasons set forth below, this Court concludes that defendant's motions should be denied.

### I. *Background*

For the purpose of considering these motions, the parties have stipulated to many of the facts involved in this matter. In addition, a number of documents has been submitted for the Court's consideration. The facts may be summarized as follows.

The defendant is the third in a succession of Texas corporations bearing the name "U.S. Life Insurance Company." The parties have referred to them as U.S. Life I, U.S. Life II, and U.S. Life III, and this Court will do the same. The defendant in this action is U.S. Life III.

U.S. Life I was incorporated under the laws of Texas in 1947, and began doing business in 1948. It became a subsidiary of American Life Insurance Co. in 1958, and, following a merger, it became a subsidiary of American Amicable Life Insurance Co. in 1965. In 1979, U.S. Life I's name was changed to Amicable Life Insurance Co. Throughout its existence from 1947 to 1979, U.S. Life I was licensed and authorized to conduct life insurance business in Texas only. U.S. Life I did not sell any new insurance policies, however, from 1969 to the date of its name change in 1979.

In April 1980, Amicable Life Insurance Co. (formerly U.S. Life I), executed articles of incorporation of a new subsidiary to be formed under the name "U.S. Life Insurance Company" (U.S. Life II). The Texas Commissioner of Insurance granted the new company a certificate of authority in November of that year. In March 1981, U.S. Life II's parent company (now named American-Amicable Life Insurance Co.) sold U.S. Life II to another insurance company. That company agreed to reserve a name other than "U.S. Life," and consequently U.S. Life II's name was changed. During its brief existence, U.S. Life II sold no insurance, nor did it obtain approval for the sale of policies from the Texas Commissioner of Insurance.

In June 1981, American-Amicable Life Insurance Co. executed articles of incorporation for a new subsidiary named "U.S. Life Insurance Company of Texas" (U.S. Life III). The new company was granted a certificate of authority in February 1982. In July 1982, its name was changed to "U.S. Life Insurance Co.," and an amended certificate of authority was obtained. U.S. Life III is licensed to do business in Texas only; it has not sold any insurance to date.

USLIFE Corporation is an insurance holding company and sells no life or other insurance itself. The other plaintiff insurance companies are all wholly-owned subsidiaries of USLIFE Corp., and they all use the tag "a USLIFE Company" in conjunction with their root name.

In 1973, plaintiff Great National Life Insurance Co. sought approval from the Texas Commissioner of Insurance to do business under the name USLIFE Life Insurance Company of Texas. USLIFE initially obtained approval, but then U.S. Life I filed objections, and adversary proceedings were held before the State Insurance Board. At those proceedings, USLIFE presented sworn testimony in which it maintained the position that its name was not likely to mislead or confuse the public in comparison with the U.S. Life Insurance Company. Their argument was based chiefly upon the difference in the logos and the difference in the size of the companies. The board and the Texas Commissioner of Insurance rejected USLIFE's position, concluding instead that its name was likely to mislead the public. The Commissioner issued an order on November 21, 1973, in which he revoked the prior approval of USLIFE's name and enjoined USLIFE from use of the name USLIFE Life Insurance Company of Texas after January 15, 1974.

USLIFE pursued the litigation to the state District Court of Travis County, Texas, 126th Judicial District, and thence to the Texas Court of Civil Appeals, Third Supreme Judicial District. The district court entered a judgment affirming the Commissioner's order and it issued a permanent injunction against USLIFE; the court of civil appeals affirmed the district court's judgment.

In December 1973, USLIFE filed an application for federal registration of its service mark. Its service mark was registered by the U.S. Patent and Trademark Office in November 1975.

In the present action, USLIFE contends that there is a likelihood of confusion between its service mark and the name U.S. Life Insurance Co., and it seeks to enjoin U.S. Life III from the use of that name.

## II. *Judicial Estoppel*

U.S. Life contends that plaintiffs should be "judicially estopped" from maintaining its present position that there is a likelihood of confusion between their respective names, because it asserted the contrary position in the prior state administrative and judicial proceedings. Plaintiffs argue in response that they should not be estopped because they were not successful with their position in the prior proceedings.[1] The issue for this Court to consider is whether prior success is a requirement for the application of judicial estoppel.

The doctrine of judicial estoppel is an equitable principle which generally operates to preclude a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation. *See generally* 1B *Moore's Federal Practice* ¶ 0.405[8] (1982). Judicial estoppel is distinct from equitable estoppel, which may also be applied to prevent a party from contradicting a position taken in a prior judicial proceeding. *See Davis v. Wakelee,* 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895). Equitable estoppel focuses on the relationship between the parties to the prior litigation, and it applies where one of the parties has detrimentally relied upon the position taken by the other party in the earlier proceeding. *See Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir.1982). Where prejudicial reliance upon the factual assertions of the opposing party has occurred, that party will be estopped from subsequently arguing a contrary position.

By contrast, the judicial estoppel doctrine looks to the relationship between the litigant and the judicial system and "is intended to protect the integrity of the judicial process." *Edwards,* 690 F.2d at 598. As a general matter, judicial estoppel applies in cases where a party attempts to

---

1. Plaintiffs also argue that both the legal issue and factual position asserted were different in the state proceedings from those in the present case. While this Court does not reach that issue, it may do so to indicate that the Court finds that argument less than convincing.

contradict his own sworn statements in the prior litigation. The policy here is at least in part to preserve the "sanctity of the oath." *Moore's, supra.* More broadly speaking, courts seek to prevent parties from "playing fast and loose" with them to suit the exigencies of self interest. *See Scarano v. Central Ry. Co. of New Jersey,* 203 F.2d 510, 513 (3d Cir.1953). Because the doctrine focuses on the relationship between the party to be estopped and the judicial system, courts generally find that it may be invoked by a person who was not party to the first suit. *See, e.g., Gottesman v. General Motors Corp.,* 222 F.Supp. 342, 344 (S.D.N.Y.1963).

The contours of the doctrine vary in certain respects from one jurisdiction to another. Relevant here is the variation according to whether or not judicial estoppel can only be applied when the prior position was successfully maintained. The more expansive approach, sometimes referred to as the Tennessee rule, holds that *any* prior position maintained in a judicial proceeding may be used to estop a subsequent inconsistent position. *See Moore's, supra.* Under the more widely accepted approach, however, success in the prior proceeding is considered necessary for the estoppel to apply. *See, e.g., Edwards,* 690 F.2d at 598 (6th Cir. 1982); *Konstantinidis v. Chen,* 626 F.2d 933, 937 (D.C.Cir.1980) (applying District of Columbia law); *United States v. Webber,* 396 F.2d 381, 386 (3d Cir.1968); *Moore v. Neff,* 629 S.W.2d 827, 829 (Tex.Civ.App.—Houston [14th Dist.] 1982, no writ); *cf. Allen v.*

*Zurich Ins. Co.,* 667 F.2d 1162, 1167 (4th Cir.1982) (judicial estoppel "obviously more appropriate where party asserting contrary position previously prevailed).

The rationale for the requirement of prior success lies in the risk of inconsistent results. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4477 (1983). As the Sixth Circuit recently observed, if the second court were to adopt a party's position where that party was successful in asserting the contrary position in a prior proceeding, then "at least one court has probably been misled." *Edwards,* 690 F.2d at 599. "Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected." *Id.* Courts following this approach note that where the party maintaining the inconsistent position was not previously successful, that party's statements still remain available as evidence, and may be introduced as party admissions at trial. *See Parkinson v. California Co.,* 233 F.2d 432, 437–38 (10th Cir.1956).

The law of the Fifth Circuit, which this Court must apply here, is scant on the subject of judicial estoppel. The doctrine is clearly recognized and has been applied by this Circuit.[2] It may be observed that in each of the cases that this Court has discovered where the doctrine was applied, the party to be estopped was, in fact, previously successful in its urging of its inconsistent position.[3] However, in none of these cases

---

**2.** *See, e.g., In re Double D Dredging Co.,* 467 F.2d 468 (5th Cir.1972) (prior specific pleading in separate part of same litigation estopped party from contradicting that pleading later); *Insurance Co. of North America v. Ozean/Stinnes-Linien,* 367 F.2d 224 (5th Cir.1966) (party that successfully asserted motion in New Orleans to transfer case to Savannah for convenience of parties and witnesses was estopped from asserting motion in Savannah to decline jurisdiction); *Livesay Industries v. Livesay Window Co.,* 202 F.2d 378 (5th Cir.1953) (plaintiff who was co-party with defendant in a previous patent infringement suit in which they were both successful was estopped from taking inconsistent position on patent validity in subsequent proceeding); *cf. In re Yarn Processing Patent Validity Litigation,* 498 F.2d 271 (5th Cir.1974) (judicial estoppel not applicable

where issue in the prior proceedings differed from that in case at bar).

**3.** Defendant cites *Texas Co. v. Gulf Refining Co.,* 26 F.2d 394 (5th Cir.1928) for the proposition that prior success is not required for a court to apply judicial estoppel in this Circuit. In that case, plaintiff Texas Co. claimed beneficial ownership of a patent issued to its former employee McAfee, now an employee of Gulf Refining, on the ground that the invention was made during the period of his employment. Texas Co. raised this claim only after a protracted litigation, which it lost, in which it asserted that it was Gray, McAfee's superior, and not McAfee who had made the invention. In ruling that Texas Co. was estopped from asserting its inconsistent position which accepted that McAfee was the inventor, the court

did the Fifth Circuit undertake an elaboration of the requisites for the application of judicial estoppel.

■ In the absence of any clear guidance from the Fifth Circuit, this Court is of the opinion that a requirement of prior success is well-founded and that it is the better approach. To estop a party from urging a position is an extreme measure which should only be taken where the equities are clearly in its favor. The equities in support of judicial estoppel are substantially increased where the possibility of inconsistent results exists. Accordingly, this Court concludes that prior success should be a requisite for its application.

■ In the present case, USLIFE was not successful in maintaining its position that the public was not likely to be misled as between its name and the name U.S. Life Insurance Co. in the adversary proceedings before the State Insurance Board or the state courts. As a result, it will not be estopped from maintaining an inconsistent position in this Court.

### III. *McCarran-Ferguson Act*

The McCarran-Ferguson Act provides that no Act of Congress shall invalidate, impair or supersede the law of any State enacted "for the purpose of regulating the business of insurance." 15 U.S.C. § 1012.[4] Defendant contends that the McCarran-Ferguson Act precludes the application of the Lanham Trademark Act in this case, since the State of Texas already regulates the names under which insurance companies may do business in the state. The issue before this Court is whether the regulation and licensing of the names of insurance companies by a state insurance board constitutes regulation of the "business of insurance" within the meaning of the McCarran-Ferguson Act.

There is no controlling case law which directly decides whether the McCarran-Ferguson Act can have a limiting effect upon the Lanham Act.[5] Hence the starting point for this Court's analysis is in the recent pronouncements of the Supreme Court concerning the application of the McCarran-Ferguson Act with respect to other federal laws.

The Supreme Court has explained its attention to the language "business of insurance" in the Act. "The statute did not purport to make the States supreme in regulating all the activities of insurance com-

---

4. Section 1012 provides in its entirety:
 (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
 (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after

based its rationale upon the fact that the defendant had relied, to its prejudice, upon the plaintiff's former position. The court stated: "It is unbelievable that appellee would have incurred the trouble and expense involved in prosecuting that contest, and preparing to continue to make use of the process sought to be patented, if appellee had been apprised of the fact that, because of the relations of both Gray and McAfee to appellant as the latter's employees, appellant was entitled to the beneficial ownership of that process, whether the inventor or discoverer of it was Gray or McAfee." 26 F.2d at 397. Because this rationale was used, it is clear that the court was applying equitable, rather than judicial, estoppel.

June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

5. In *Sears, Roebuck & Co. v. All States Life Ins. Co.,* 246 F.2d 161 (5th Cir.1957), in language which both parties agree to be dicta, the court expressed its views of the effect of the McCarran-Ferguson Act on the Lanham Act after having disposed of the case on other issues. The court stated its view that "there is nothing in the McCarran Act that limits the right of the owner of a trade or service name to seek redress in the Federal courts merely because the approval of the name of the infringing insurance company is part of the duties of the state board." 246 F.2d at 172. Given the relatively extensive consideration that the Supreme Court has given to the McCarran-Ferguson Act since that time, the *Sears* opinion can serve as little guidance today.

panies; .... Insurance companies may do many things which are subject to paramount Federal regulation; only when they are engaged in the 'business of insurance' does the statute apply." *SEC v. National Securities, Inc.,* 393 U.S. 453, 459–60, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). As that Court observed, however, the legislative history sheds little light on the meaning of "business of insurance." 393 U.S. at 459, 89 S.Ct. at 568.

In *Union Labor Life Ins. Co. v. Pireno,* —— U.S. ——, 102 S.Ct. 3002, 73 L.Ed.2d 647, 656 (1982), the Supreme Court identified three characteristics of the business of insurance which it said are relevant criteria in deciding whether a particular practice constitutes the "business of insurance" within the McCarran-Ferguson Act. Citing its decision in *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the Court noted first that one indispensable characteristic of insurance is the "spreading and underwriting of a policyholder's risk." —— U.S. at ——, 102 S.Ct. at 3007, 73 L.Ed.2d at 655. Next, the Court pointed to the contract between the insurer and the insured, and observed that Congress was concerned with the "relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement." *Id.* Lastly, the Court noted that Congress had wanted to make cooperative ratemaking efforts exempt from the antitrust laws, because of the "widespread views that it was very difficult to underwrite risks in an informed and responsible way without intra-industry cooperation." *Id.* —— U.S. at ——, 102 S.Ct. at 3009, 73 L.Ed.2d at 656. The Court summarized these criteria:

> *first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is

limited to entities within the insurance industry.

*Id.* None of the criteria is necessarily determinative by itself, the Court said.

The Supreme Court has found certain insurance company practices to fall within the coverage of the McCarran-Ferguson Act. These have included the fixing of rates, the selling and advertising of policies, and the licensing of companies and their agents. *See National Securities,* 393 U.S. at 460, 89 S.Ct. at 568, and cases cited therein. On the other hand, the Supreme Court has found certain practices to fall outside the scope of the Act.[6] Of those cases, most notable here is *National Securities,* in which the Court found that the McCarran-Ferguson Act did not remove the SEC's power to regulate an allegedly fraudulent scheme centering on a contemplated merger between two insurance companies which the Arizona Director of Insurance had approved.

 In the present case, an application of the criteria set forth in *Pireno* leads this Court to the conclusion that the name under which an insurance company operates does not constitute the "business of insurance." First, the insurance company's name does not affect the transferring or spreading of a policyholder's risk. Second, although an insurance company's name may be a factor in inducing people to become policyholders, as defendant argues, the company's name is not an integral part of the insurance policy relationship between the insurer and the insured. That is, the company's name does not affect the type of policy, its reliability, interpretation, or enforcement. Third, the name of an insurance company is a matter individual to that company—it is not an area like rate-fixing in which intra-industry cooperation would operate—and so this final factor is inapplicable.

---

6. *See, e.g., Pireno, supra* (insurance company's use of peer review committee for advice on reasonableness of fees subject to attack under the antitrust laws); *Royal Drug, supra* (contracts between insurance company and pharmacies in connection with an insurance policy which would entitle insured to obtain prescription drugs from a participating pharmacy at a greater discount than from a non-participating pharmacy subject to antitrust scrutiny).

Defendant nevertheless urges this Court to find that the McCarran-Ferguson Act overrides the application of the Lanham Act here by virtue of the Supreme Court's ruling in *FTC v. National Casualty Co.,* 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958). In that case, the Court held that the McCarran-Ferguson Act prevented the FTC from regulating, under the authority of § 5 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45, the intra-state-advertising practices of insurance companies where those practices were already regulated by state law. Defendant offers this three-step argument: (1) false designation of origin and the deceptive use of trade names are conduct regulated under the FTC Act as well as the Lanham Act; (2) the conduct here in question could not be regulated by the FTC because of the *National Casualty* ruling; and (3) that conduct should similarly be exempt from claims under the Lanham Act.

Defendant's argument is not persuasive in this case. The *National Casualty* decision dealt only with advertising practices; it did not deal with trademarks or service marks. The advertising practices of insurance companies might be regarded as closer to the core of the relationship between the insurer and the insured than the name or service mark under which an insurance company operates. More importantly, the Court's reasoning in that case focused on the proviso in section 2(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1012, which refers specifically to the Federal Trade Commission Act. *See* 357 U.S. at 563 & n. 3, 78 S.Ct. at 1261 & n. 3. The Court provided no discussion of the meaning of "business of insurance." In sum, there is nothing in *National Casualty* which would cause this Court to avoid or alter its consideration of the three *Pireno* criteria.

For these reasons, this Court concludes that the McCarran-Ferguson Act does not preclude plaintiffs' claims under the Lanham Act.

IV. *The Burford Abstention Doctrine*

Finally, defendant argues that this Court should exercise its sound discretion to abstain from considering plaintiff's Lanham Act claims on the basis of the abstention doctrine expressed by the Supreme Court in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

In *Burford,* the Supreme Court considered whether a federal district court should abstain from entertaining a suit to enjoin the enforcement of an order issued by the Texas Railroad Commission relating to the drilling of oil wells in the vast East Texas oil field. Sun Oil was attacking the Commission's order in part on the basis of state law (with the federal court's jurisdiction invoked by the diversity of citizenship of the parties), and in part on the basis of a claim that the order denied them due process of law.

As the Court explained, the Commission's order was part of Texas' general regulatory system devised for the conservation of oil and gas in the state. 319 U.S. at 318, 63 S.Ct. at 1099. Oil and gas were (and are) two of the state's most important natural resources, and their impact on the economy of the state was substantial. *Id.* at 320, 63 S.Ct. at 1100. Moreover, geological realities meant that the retrieval of oil and gas from a field must be regulated as a unit for conservation purposes. *Id.* at 319, 63 S.Ct. at 1100. The federal government had left the principal responsibility to regulate oil fields with the states. *Id.* Within the State, the primary task of regulating and accommodating the diverse interests at stake was delegated to the Texas Railroad Commission. The regulatory scheme was backed up by a system of thorough judicial review within the state. *Id.* at 325, 63 S.Ct. at 1103. All appeals from the Commission's orders were funneled to a state district court in Travis County, in order to avoid possible conflict within the Texas court system.

Under these circumstances, the Supreme Court held that the questions raised involving regulation of the oil and gas industry by the state administrative agency "so clearly involve basic problems of Texas policy" that it was appropriate for the federal district court to abstain from hearing Sun Oil's claims. *Id.* at 332, 63 S.Ct. at 1106.

The case at bar presents a very different situation from that facing the Court in *Burford*. The considerations involved in regulating the names of insurance companies are less complex and less peculiarly within the expertise of a State administrative agency than those involved in controlling the drilling of oil fields. In addition, unlike in *Burford,* here there exists a separate federal regulatory scheme maintained by the U.S. Patent and Trademark Office, and with rights protected under the Lanham Act, which covers essentially the same subject matter that the State regulates. Plaintiffs should not be required to forego their rights under federal law simply because the State confers similar rights. Defendant's motion for this Court to abstain is denied.

It is so ORDERED.