George H. **JETT** et al., Appellants,

v.

Albert Barnes **ZINK** et al., Appellees.

Howard M. **PACK** et al., Appellants,

v.

Albert Barnes **ZINK** etc., et al., Appellees.

Nos. 21282, 21283.

United States Court of Appeals
Fifth Circuit.

June 23, 1966.

Rehearing Denied in No. 21282, July 18, 1966.

Rehearing Denied in No. 21283, Aug. 11, 1966.

Harry H. Riddick, Charles B. Arendall, Jr., Mobile, Ala., for appellants.

C. A. L. Johnstone, Jr., Willis C. Darby, Jr., Mobile, Ala., for appellees.

Before WOODBURY,* WISDOM and BELL, Circuit Judges.

WOODBURY, Senior Circuit Judge:

This convoluted litigation began with a suit in the Circuit Court of Mobile County, Alabama, for a declaratory judgment as to the validity, and if valid the meaning, of a contract referred to by the parties and hereinafter as the Sterling Agreement. The plaintiffs were Bart B. Chamberlain, Jr., a citizen of Alabama, and G. H. Jett, a citizen of Louisiana. The defendants were Sterling Oil of Oklahoma, Inc., a Delaware corporation having its principal place of business in Oklahoma, and Albert B. Zink, a citizen of Pennsylvania, and Herbert C. Smyth, a citizen of New York, both as individual trustees of Sterling. There being complete diversity of citizenship of the parties and clearly an adequate amount in controversy, the suit was removed to the United States District Court for the Southern District of Alabama.

At this juncture Howard M. Pack and Joseph Kahn, both citizens of New York, and Geo. H. Jett Drilling Co., a Delaware corporation, with the consent of Chamberlain and Jett, moved for leave to intervene as indispensable parties plaintiff, and Chamberlain and Jett moved for an order making Cornwall Trading Corporation, a Delaware corporation, and Four States Drilling Company, Inc., a Texas corporation, involuntary parties plaintiff. In anticipation of the granting of the motions for leave to intervene and the motion to add involuntary parties plaintiff, Chamberlain and Jett moved to remand to the state court on the ground that with the entrance into the litigation of indispensable parties plaintiff complete diversity of the citizenship of the parties would no longer exist.

While these motions were under submission in the court below, Pack, Kahn and Geo. H. Jett Drilling Co. brought suit in the Circuit Court of Mobile County, Alabama, against Zink, Smyth, Sterling Oil, Jett, Chamberlain, Cornwall, Four States and others who need not be mentioned for the same relief as that sought in the earlier suit described hereinabove. Zink, Smyth and Sterling removed this suit to the court below alleging fraudulent joinder of parties and the existence of a separable controversy between them and Jett and Chamberlain. Pack, Kahn and Geo. H. Jett Drilling Co. moved to remand the suit to the state court from whence it came.

The court below without opinion denied all the motions listed above. Pack, Kahn and Geo. H. Jett Drilling Co. appealed from the denial of their motions for leave to intervene and Jett and Chamberlain appealed from the denial of their motions to add parties plaintiff and to remand. This appeal is No. 21,282 on our docket. Pack, Kahn and Geo. H. Jett Drilling Co. appealed from the denial of their motion to remand. This appeal is No. 21,283 on our docket. Both appeals are properly before this court under the provisions of Title 28 U.S.C. § 1292(b).

Originally there was complete diversity of citizenship between plaintiffs and defendants. Neither Jett nor Chamberlain was a resident of Pennsylvania, as was the defendant Zink, or of New York, as was the defendant Smyth, or of Delaware, where the defendant Sterling was incorporated, or of Oklahoma, where it had its principal place of business. With the case in that posture and the juris-

* Senior Judge of the First Circuit, sitting by designation.

dictional amount in controversy, removal was routine. However, should the proposed parties plaintiff be admitted, there would no longer be complete diversity of citizenship of the parties, for Cornwall and Jett Drilling are both Delaware corporations, as is the defendant Sterling, and Pack and Kahn are both citizens of New York, as is the defendant Smyth.

■ The appellees in No. 21,282 contend that the right to remove depends upon the case disclosed by the pleadings when the petition for removal is filed and that the subsequent addition of new parties is not to be considered on a motion to remand. The cases they cite in support of this proposition are not in point. On the contrary the law is clearly settled that in diversity cases the question of indispensable parties is inherent in the issue of federal jurisdiction and that indispensable parties must be joined, *sua sponte* by the court if need be, even though to do so destroys complete diversity of citizenship of the parties and ousts federal courts of jurisdiction under the rule of Strawbridge v Curtis, 3 Cranch 267, 2 L.Ed. 435 (1806). Niles-Bement-Pond Co. v. Iron Moulders Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145 (1920); Baltimore and Ohio Railroad v. City of Parkersburg, 268 U.S. 35, 38, 45 S.Ct. 382, 69 L.Ed. 834 (1925); Calcote v. Texas Pac. Coal & Oil Co., 157 F.2d 216, 218, 219, 167 A.L.R. 413 (C.A. 5, 1946), cert. denied 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671 (1946), rehearing denied, 329 U.S. 830, 67 S.Ct. 356, 91 L.Ed. 704 (1946).

■ The question then in No. 21,282 is whether the parties who sought to intervene, or who the original plaintiffs sought to have made involuntary plaintiffs, were so indispensable to the litigation that no court should proceed to final decision without them, that is to say, "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with

equity and good conscience." Shields v. Barrow, 17 How. 129, 139, 15 L.Ed. 158 (1854), cited with approval in Waterman v. Canal-Louisiana Bank Co., 215 U.S. 33, 48, 30 S.Ct. 10, 54 L.Ed. 80 (1909), and Niles-Bement-Pond Co. v. Iron Moulders Union, supra, 254 U.S. 80, 41 S.Ct. 39. And see United Shoe Machinery Corp. v. United States, 258 U.S. 451, 456, 42 S.Ct. 363, 364, 66 L.Ed. 708 (1922), in which the Court said: "The relation of indispensable parties to the suit must be such that no decree can be entered in the case which will do justice to the parties before the court without injuriously affecting the rights of absent parties."

■ We must, therefore, determine the nature of the interest in the litigation of any one of the persons or corporations whose presence in the suit would destroy complete diversity of citizenship of the parties. The nature of an interest in litigation depends upon the law of the state concerned, in this case Alabama, for: "In a diversity case, state substantive law will govern in determining the rights and interests of all concerned. After those rights and interests have been ascertained by state law, a federal court will determine indispensability of a party according to its own rules, taking into consideration whether justice can be done and complete relief afforded. This will depend, of course, on the substantive rights created by the state." Hertz v. Record Publishing Co. of Erie, 219 F.2d 397, 399, 400 (C.A.3, 1955), cert. denied 349 U.S. 912, 75 S.Ct. 601, 99 L.Ed. 1247 (1955). See also, 3 Moore, Federal Practice, ¶ 19.07. So much for the present for the law; we turn now to the facts as disclosed by the pleadings.

This litigation grew out of the purchase as of May 1, 1959, by Jett and Chamberlain from Gulf Oil Corporation of all of its producing and non-producing leases in, near or related to the Citronelle Oil Field in Mobile County, Alabama, and their simultaneous purchase from Gulf Refining Company of the Citronelle-Mobile Gathering System. The purchase was financed in part by the reservation

by Gulf Oil of a production payment and in part by loans from a New York bank secured by mortgages on the properties. Further financing was obtained by a loan from The Equity Corporation secured by a mortgage junior to those given to the New York bank which was guaranteed in part by Pack, Kahn and Cornwall in return for which they were given an interest in the properties.

As of the date of purchase, May 1, 1959, Jett and Chamberlain entered into the Sterling Agreement with Sterling Oil of Oklahoma, Inc. This is a long and complicated document. No useful purpose would be served by analyzing it in detail. It will suffice to say that by the terms of the agreement the parties cancelled, annulled and terminated all agreements of every sort and kind previously made and entered into between them, that Sterling transferred to Jett and Chamberlain all of its rights, interests, claims and demands of every kind, character and description in return for which Jett and Chamberlain agreed to grant, transfer and convey to Zink as individual trustee for Sterling certain "overriding royalties" and other interests in the properties upon the occurrence of four events: (a) when the production payment carved out and reserved by Gulf Oil, which it had assigned to Olympic Oil and Gas Corporation, shall have been fully paid and satisfied; (b) when the production loan shall have been fully paid and satisfied; (c) when $500,000 of the amount borrowed from The Equity Corporation which Jett and Chamberlain had applied to the purchase of producing leases from Gulf Oil shall have been repaid, and (d) when Jett and Chamberlain shall have recovered all legal fees, printing costs and other expenses incurred by them in connection with the financing referred to above.

As of the same date, May 1, 1959, Jett, Chamberlain, Cornwall (which apparently is the successor in interest of The Equity Corporation), Pack and Kahn entered into a supplemental agreement, so called. This agreement recites that by a concurrent conveyance Cornwall had acquired

an undivided 23% interest in the gathering system purchased by Jett and Chamberlain from Gulf Refining Co. and that Pack and Kahn together had acquired an undivided 5.75% interest in the system, that Cornwall by concurrent assignment of interest had acquired an undivided 20% interest in deep rights in the producing leases and Pack and Kahn together had acquired an undivided 5% interest in those leases, and it recites that under the Sterling Agreement Jett and Chamberlain had agreed upon the happening of certain events to convey to Sterling Oil's trustee, Zink, (i) an overriding royalty in each producing lease equal in value to 25% of a working interest in the lease, (ii) "certain percentages" of the gross profits of the gathering system, and (iii) an overriding royalty of 1/64 of 7/8 on each non-producing lease. The supplemental agreement then goes on to provide that Cornwall, Pack and Kahn "confirm" that their interests in the gathering system are "subject" to their proportionate share of the obligations to pay the "percentages of gross profits" of the gathering system to Sterling Oil, referred to in (ii) above, and that when the time comes for Jett and Chamberlain to convey to Sterling Oil the overriding royalty interest provided in the Sterling Agreement they will take "appropriate action" and deliver such documents as may be necessary "to subject" their interests to the overriding royalties referred to in (i) and (iii) above, "if" Jett and Chamberlain shall concurrently convey to them (Cornwall, Pack and Kahn), without cost, "additional working interests" in each lease in which they have already acquired an interest in the amount which, when added to their present interest, will be equal to their present interests free of the burden of the overriding royalty granted to Sterling Oil Company under the Sterling Agreement.

The complaint alleges that after the purchase of the properties, production from the wells fell off to such an extent that it would have been impossible for

Jett and Chamberlain to have made payments on the loans as payments fell due and that only because of the expenditure by Jett, Chamberlain, Cornwall, Pack and Kahn of $1,700,000 for reworking the wells was foreclosure of the mortgages on the properties avoided. And it is alleged in the complaint that reworking the wells so substantially increased oil production that if the complainants are allowed to recover the expense of reworking, plus interest, the net income of oil runs will be so great that the date of the transfer of overriding royalties to Sterling Oil under the Sterling Agreement will not be postponed beyond the date when the transfer would have taken place without the wells having been reworked and that, as of the date of transfer, the value of Sterling Oil's overriding royalty interest will be substantially greater than it would have been had the wells not been reworked.

So much for the present for Cornwall, Pack and Kahn. We turn now to the remaining allegedly indispensable parties.

Neither Geo. H. Jett Drilling Co., the Delaware corporation, nor Four States Drilling Company, Inc., the Texas corporation, is mentioned in the complaint. In its petition for leave to intervene as a party plaintiff, Geo. H. Jett Drilling Co. alleges that Jett and Chamberlain assigned all of their right, title and interest in approximately 975 leasehold acres from the non-producing leases they had acquired from Gulf Oil to Jett Drilling Co., Inc., another and apparently a separate corporation, and that Jett Drilling Co., Inc., assigned all of its right, title and interest in "a portion" of the 975 leasehold acres to Geo. H. Jett Drilling Co., the petitioner for leave to intervene, which it in turn had assigned to another corporation reserving to itself and its successors and assigns an overriding royalty interest "equal to or larger" than the 1/64 of 7/8 to be conveyed to Sterling

Oil under the Sterling Agreement which, it is alleged, will "come out of and be deducted from the overriding royalty interest reserved" by the petitioner, Geo. H. Jett Drilling Co.

Jett's and Chamberlain's motion to add Cornwall and Four States Drilling Co., Inc., as parties plaintiff alleges, insofar as Four States is concerned, that it was "formerly Jett Drilling Co., Inc.," and that under assignments of "various portions" of the 975 leasehold acres other than those assigned to Geo. H. Jett Drilling Co. it had excepted and reserved an overriding royalty interest similar to that reserved by Jett Drilling Co. in the assignments it had made of other portions of the leasehold acreage.

The relief requested by Jett and Chamberlain in their complaint is twofold. First they ask that the Sterling Agreement be declared null and void for the reason that Sterling Oil was not qualified to do business in Alabama when the Agreement was entered into [1] and as alternative relief they ask for a construction of the Sterling Agreement favorable to their interest. Specifically, they first ask for a valuation of the undivided percentage interests conveyed to Cornwall, Pack and Kahn and a declaration that the conveyance of those interests to them constituted an expense or cost incurred by the complainants (Jett and Chamberlain) in connection with the creation of equity financing referred to in the Sterling Agreement. Then they ask for a declaration that they and Pack, Kahn and Cornwall be allowed to recover the $1,700,000 spent for reworking the wells out of the net income of the oil runs prior to the time of transfer of the overriding royalty to Sterling Oil's trustee under the Sterling Agreement.

■ The long and short of the matter is that whatever rights the allegedly indispensable parties may have are "subject" to the rights of Sterling Oil. Thus,

---

[1]. The Sterling Agreement was effective May 1, 1959, but it was not executed by the parties until after that date. Sterling Oil executed it in New York on May 26, 1959, Zink executed it in Pennsylvania on May 27, 1959, Sterling Oil qualified to do business in Alabama on August 6, 1959, and Chamberlain and Jett executed it in Alabama and Louisiana on August 17 and 18, 1959, respectively.

naturally, they, like the original plaintiffs, would like to remove Sterling Oil from the scene by having the Sterling Agreement declared null and void and, failing that, to have the Agreement construed to their advantage. But this is not enough to make them indispensable parties. Their interests must be of such a nature that justice cannot be accorded the original parties before the court without injuriously affecting their rights.

Measured by this test the interests of those who would join or be joined as plaintiffs are not such as to make them indispensable parties. Should a decree be entered adverse to Jett and Chamberlain either as to the validity of the Sterling Agreement or as to its meaning, the rights of the absent parties would still be subject to the rights of Sterling Oil under the Sterling Agreement as the absent parties with knowledge of the Sterling Agreement agreed that they should be. Their rights would not be injuriously affected. On the other hand, should a decree be eventually entered in favor of Jett and Chamberlain on either issue the absent parties would stand to gain at least by a precedent. We do not see how, win, lose or draw, the rights of the absent parties could be injuriously affected by any decree that might be entered in the case. The rulings on the motions in No. 21,282 are affirmed.

We turn now to No. 21,283.

The case before us on this appeal involves the same parties, and others, and the same subject matter. But it presents a separate problem for consideration because the question now before us is not whether parties are indispensable but whether there has been a joinder of improper parties to defeat federal jurisdiction.

To recapitulate and amplify, the case now before us was not removable on the face of the complaint because complete diversity of citizenship of the parties did not there appear. The plaintiffs Pack and Kahn were citizens of New York and the plaintiff Geo. H. Jett Drilling Co. was for jurisdictional purposes a citizen of Delaware,[2] and the defendant Smyth is a citizen of New York, as are the plaintiffs Pack and Kahn, and the defendant Sterling Oil is a citizen of Delaware as is the plaintiff Geo. H. Jett Drilling Co. Zink, Smyth and Sterling Oil removed the case to the court below alleging that when properly realigned the only necessary parties plaintiff will be Jett and Chamberlain and the only necessary parties defendant will be themselves, Zink, Smyth and Sterling Oil, that all other named parties are merely nominal parties, and that a separable controversy exists between them and Jett and Chamberlain. Wherefore they assert that the action is one within the original jurisdiction of the United States District Courts under Title 28 U.S.C. § 1332(a) (1). The court below denied the motion of Pack, Kahn and Geo. H. Jett Drilling Co. to remand and it is their appeal that is presently under consideration.

The appellees, Zink, Smyth and Sterling Oil, contend that Jett, Chamberlain, Pack, Kahn and Geo. H. Jett Drilling Co. have attempted to deprive them of their federally created right to have the suit tried in a federal court by fraudulently and in bad faith joining other parties in order to defeat removal. They argue that this is conclusively established by the filing of the second or Pack-Kahn suit while motions for leave to intervene, to add parties plaintiff and to remand in the earlier or Jett-Chamberlain suit were under submission in the court below. And they say that this is clearly established by the fact that Jett, Chamberlain, Pack, Kahn and Geo. H. Jett Drilling Co. are all represented by the same counsel. We do not agree.

It is horn book law that fraud is never presumed but must be established by clear and persuasive evidence. Moreover, there was good reason for bringing the second suit in order to assure the plaintiffs therein a day in court in the event that they were not admitted as parties plaintiff in the earlier suit, as in-

---

2. The location of its principal place of business is not alleged.

deed they were not. The question is whether they have stated a cause of action against any of the defendants whose presence in the litigation would destroy complete diversity of citizenship of the parties. We think they have.

As we have already pointed out, the rights acquired in the properties by Pack, Kahn and Geo. H. Jett Drilling Co., and the same may be said of the rights of Cornwall which probably should be realigned as a plaintiff, are "subject" to the rights acquired by Sterling Oil under the Sterling Agreement. Thus they have an obvious interest in the validity of the Sterling Agreement and in an interpretation of it to their advantage. This brings them within the provisions of the declaratory judgment law of Alabama, Code of Alabama of 1940, Title 7, § 157 (1958), which so far as here material reads: "Any person interested under a * * * written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a * * * contract * * *, may have determined any question of construction or validity arising under the * * contract * * * and obtain a declaration of rights, status, or other legal relations thereunder."

But Sterling Oil insists that it has no quarrel with Pack, Kahn, Cornwall and Jett Drilling but only with Jett and Chamberlain and to remove any possibility of doubt as to this, Sterling Oil and its trustees, Zink and Smyth, a month before hearing in this court, filed a disclaimer of any right of action against Pack, Kahn, Cornwall and Jett Drilling arising out of the allegations in either complaint. This disclaimer is of no moment. It is not for defendants to shape plaintiffs' cases. No doubt most defendants would like to escape trial and possible liability by disclaiming any right of action against a plaintiff. That is not the point. The question is whether a plaintiff has stated a cause of action against a defendant. And that these plaintiffs have done as appears hereinbefore.

The question remains whether this case, No. 21,283, falls within the scope of Title 28 U.S.C. § 1441(c) which provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

■ In American Fire & Casualty Co. v. Finn, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951), the Court said that under § 1441(c), introduced into the Code in 1948, a separable controversy is no longer an adequate ground for removal unless it also constitutes a "separate and independent claim or cause of action." And it said at page 14, 71 S.Ct. at page 540 that " * * * where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." It is the joinder of claims, not the joinder of parties, that makes § 1441 (c) applicable. See 1A Moore's Federal Practice ¶ 0.163 [4–5]. And here all plaintiffs including those who would be plaintiffs upon realignment of parties according to interest, assert the same claim, i. e., that the Sterling Agreement is invalid and, in the alternative, if valid, should be construed in a way favorable to their interest. There simply are not "separate and independent claims or causes of action" alleged. The case must be remanded to the court from whence it came.

The result is unfortunate in that it leaves the same issues pending simultaneously in a state and federal court but we see no escape from our conclusion. The parties here brought it upon themselves in their battle over the forum in which to try their case.

No 21,282 is affirmed. No. 21,283 is reversed.