474 F.2d 149
 G. H. JETT and Bart B. Chamberlain, Jr., Plaintiffs-Appellees,
v.
Albert Barnes ZINK, as individual trustee for Sterling Oil
of Oklahoma, Inc., Defendant, Sterling Oil of
Oklahoma, Inc., et al., Defendants-Appellants.
G. H. JETT and Bart B. Chamberlain, Jr., Plaintiffs-Third
Party Plaintiffs-Appellees,
v.
Albert Barnes ZINK, as individual trustee for Sterling Oil
of Oklahoma, Inc., Defendant, W. H. James, Jr., etc., et
al., Defendants-Appellants, Cornwall Trading Corporation et
al., Third Party Defendants-Appellees.
Albert Barnes ZINK, as individual trustee for Sterling Oil
of Oklahoma, Inc., Plaintiff, W. H. James, Jr.,
etc., et al., Plaintiffs-Appellants,
v.
G. H. JETT and Bart B. Chamberlain, Jr., Defendants-Third
Party Plaintiffs-Appellees, Cornwall Trading
Corporation et al., Third Party
Defendants-Appellees.
 Nos. 71-2745, 72-1637.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 9, 1973.
Rehearing and Rehearing En Banc Denied March 30, 1973.
 
 Willis C. Darby, Jr., Mobile, Ala., for appellants.
 Harold Parkman, Charles B. Arendall, Jr., Mobile, Ala., for Chamberlain and Citronelle.
 Lester M. Bridgeman, Washington, D. C., Wm. DeWitt Reams, Lewis G. Odom, Jr., Montgomery, Ala., M. A. Marsal, Mobile, Ala., for Chamberlain and others.
 Sam W. Pipes, III, Mobile, Ala., for Pack and Kahn.
 Joseph M. Matranga, Mobile, Ala., for G. H. Jett.
 Champ Lyons, Montgomery, Ala., for Equity and Cornwall.
 C. A. L. Johnstone, Jr., Mobile, Ala., for James E. Kemp, Four States Drilling Co., and Big Four Oil Co.
 Albert J. Tully, Mobile, Ala., for Zink.
 Before COLEMAN, AINSWORTH and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 These appeals are before us for the third and hopefully final time in the protracted litigation over the purchase of certain oil leases and a gathering system in or near Mobile County, Alabama. As in each of the two previous appeals, the questions presented do not concern the merits of the dispute, but instead ask us to decide the forum-state or federal-in which the "main" battle should properly be joined. We find that the district court's refusal to enjoin the pending state court proceeding and its recognition of the res judicata effect of that court's final judgment were not erroneous. Therefore we affirm the judgment of the district court in both appeals.
 
 
 2
 When this case was first before this court we described the state of the litigation as it existed in early 1964 as "convoluted." Jett v. Zink, 5 Cir. 1966, 362 F.2d 723, cert. denied, 385 U.S. 987, 87 S.Ct. 600, 17 L.Ed.2d 448. The ensuing eight years have clarified little except Chamberlain's unabated desire to have the case heard in a state court and Sterling Oil Company's equally strong preference for a federal court. To understand our resolution of these competing interests in the two present appeals we find it necessary to repeat a small portion of the voluminous procedural history of this case.[1]
 
 I. Factual Background
 
 3
 In 1963 Jett and Chamberlain brought suit against Sterling Oil in the Circuit Court of Mobile County, Alabama, seeking a declaratory judgment as to the validity of the "Sterling Agreement,"[2] or, in the alternative, a favorable construction of that agreement. (This case will be referred to as the Jett-Chamberlain action). There being complete diversity among the parties and an adequate amount in controversy, Sterling Oil removed the case to federal court. Soon thereafter, petitions were filed on behalf of Pack, Kahn, and Geo. H. Jett Drilling Company, among others, to intervene in the removed action; Jett and Chamberlain then moved to add these parties as plaintiffs, and, based on the anticipated granting of all these motions, moved to remand for lack of diversity jurisdiction. While the motions were pending, the three intervenors had a suit filed on their behalf, primarily against Jett, Chamberlain, and Sterling Oil, in the Circuit Court of Mobile County, Alabama. (This case will be referred to as the Pack-Kahn action). The requested relief was identical to that sought in the Jett-Chamberlain action. Despite an apparent absence of complete diversity in the Pack-Kahn action, Sterling Oil removed it, alleging fraudulent joinder and the existence of a separable controversy.[3] Pack and Kahn then had motions filed to remand. On January 6, 1964, the district court denied the petitions to intervene and the motions to remand, and Jett, Chamberlain, Pack, and Kahn appealed.
 
 
 4
 Although the exact scope of our opinion disposing of these appeals is questioned it clearly decided two things. First, in the Jett-Chamberlain appeal we said that, since none of the non-party petitioners was an indispensable party, the district court's refusal to remand the case was proper. Secondly, in the Pack-Kahn appeal we held that, on the state of the record as it existed then, there was no clear and persuasive evidence of fraud inherent in the bringing of that action while motions to intervene in the Jett-Chamberlain action were still pending; we thus ordered the Pack-Kahn action remanded.
 
 
 5
 With the decision made that the federal forum was appropriate for one action and inappropriate for the other, the opinion concluded:
 
 
 6
 The result is unfortunate in that it leaves the same issues pending simultaneously in a state and federal court but we see no escape from our conclusion. The parties here brought it upon themselves in their battle over the forum in which to try their case.
 
 
 7
 362 F.2d at 730.
 
 
 8
 As all parties now concede, our decision signaled the start of a race to the courthouse. Despite our signal, which was supposed to remove the brakes from the wheels of justice, it took an additional five years for either of the cases to get in gear. The interim saw a great deal in the way of sparks-extensive discovery, another unsuccessful removal, and interminable procedural squabbling-but little motion down the road to a decision. Finally, in February 1971, the district court, on its own motion, began pre-trial proceedings that were intended to lead to a federal trial beginning July 12, 1971. In response to this federal warm-up, Chamberlain's group[4] filed in the state court a motion to have the Pack-Kahn action set for trial before the Jett-Chamberlain action; it ultimately was set for trial May 4, 1971. Sterling Oil in turn reacted to this development on April 15, 1971, by asking the district court for a preliminary and permanent injunction against the state court proceeding. On April 20, 1971, the district court heard argument on the motion for preliminary injunction and on April 28, 1971, denied relief. Sterling Oil appealed this denial, but was unsuccessful in obtaining an injunction pending appeal from either the district court or this court.[5] Subsequently this appeal was dismissed for lack of prosecution.
 
 
 9
 With the final impediment removed, the state court began six weeks of hearings in the first phase of its trial-determining the validity vel non of the Sterling Agreement-and on July 10, 1971, that court entered an interlocutory decree finding it valid. Having made extensive, although at that point unsatisfactory, progress in the resolution of several substantial questions and having invested considerable time, Chamberlain's group on July 12, 1971, the day the federal trial was to begin, filed a motion in the district court to stay the federal proceedings pending a final determination in the state court. After hearings on July 12 and 14, the district court granted that motion. Additionally, at the hearing on July 14, Sterling Oil's petition for permanent injunction filed on April 15, 1971, was submitted to the court without further argument; this petition was denied July 16, 1971. Sterling Oil's appeal from this denial is before us as appeal number 71-2745.[6]
 
 
 10
 Free of the complications that a simultaneous federal trial would have caused, the state court reconvened on August 2, 1971, for phase two of its trial. After weeks of hearings, that court issued its final decree November 4, 1971. Withdrawing its interlocutory decree of July 10, it found the Sterling Agreement to be unenforceable, but subsequently held that Sterling Oil was entitled to a finders fee and reasonable compensation for services totaling in excess of $500,000. This decree was incorporated into the pleadings of the Jett-Chamberlain action and on January 27, 1972, the district court granted the Chamberlain group's motion for summary judgment based on the res judicata effect of the state court decree. Sterling Oil's appeal from the summary judgment is before us as appeal number 72-1637.[7]
 
 II. Number 71-2745
 
 11
 Separated from the chaff, Sterling Oil's argument essentially is that its right to proceed in a federal forum has been frustrated by the district court's refusing to halt the pending state court action. Recognizing that in order to be entitled to such an injunction it must come within the provisions of 28 U.S.C.A. Sec. 2283,[8] Sterling Oil has advanced four theories in support of its position. Our examination of these theories, however, must proceed from a proper awareness of the potential state-federal conflicts generated by that section and its predecessors, as recently explained by the Supreme Court in Atlantic C.L.R.R. v. Brotherhood of Locomotive Engineers, 1970, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234. The Court there cautioned against loose construction of the exceptions to section 2283, and stated that any doubts about the propriety of such a federal injunction should be resolved in favor of permitting the state courts to proceed, "with relief from error, if any, through the state appellate courts and ultimately this Court." 398 U.S. at 287, 90 S.Ct. at 1743. This statement is particularly relevant where, as is the case here, the final state judgment is currently on appeal in the Alabama state court system.
 
 A. Fraud
 
 12
 Because no Act of Congress expressly authorizes an injunction in this situation, Sterling Oil has relied primarily upon qualifying under the "where necessary in aid of its jurisdiction" language, one of the other two exceptions to section 2283. It first argues that the Pack-Kahn action, filed after the district court had obtained jurisdiction over the Jett-Chamberlain action by removal, raised identical issues and was a fraudulent attempt by Chamberlain to defeat federal jurisdiction. Because a federal district court after removal may enjoin further state proceedings in that action by a plaintiff (see Lowe v. Jacobs, 5 Cir. 1957, 243 F.2d 432, cert. denied, 355 U.S. 842, 78 S.Ct. 65, 2 L.Ed.2d 52; Peters v. Standard Oil Co., 5 Cir. 1949, 174 F.2d 162, and Armstrong v. Alliance Trust Co., 5 Cir. 1942, 126 F.2d 164), Sterling Oil argues that a federal court should enjoin a state proceeding fraudulently brought by the original plaintiff but in the name of third persons, if that action is in fact merely an attempt to litigate in state court the same issues already removed.
 
 
 13
 The evidence in the record upon which Sterling Oil bases its allegations of fraud is of two kinds. First there are depositions of Pack, Kahn, and Jett which show that, although they were financially interested in the dispute with Sterling Oil, they did not follow the litigation closely and did not originate the idea of either intervening in the Jett-Chamberlain action in federal court or bringing the Pack-Kahn action in state court.[9] Instead each individual stated that his interests were similar to Chamberlain's and that he had given Chamberlain general authority to act on his behalf in the litigation. The second kind of evidence is documents showing that Chamberlain acted on this authority to retain counsel for his "group" and to have that counsel file the Pack-Kahn action.[10]
 
 
 14
 At two different times in 1966 we had occasion to consider partially developed allegations of fraud in the Pack-Kahn action. On the first appeal, confronted only with the fact that the action had been filed while the plaintiffs' petitions to intervene were still pending, we invoked the hornbook rule that "fraud is never presumed but must be established by clear and persuasive evidence" and concluded that no fraud had been proved. After the Supreme Court had denied certiorari on that appeal, Sterling Oil moved this court to recall its mandate, claiming that the just completed Jett deposition raised "serious questions" as to the true motivation behind the bringing of the Pack-Kahn action. This motion was denied.
 
 
 15
 Sterling Oil now says that all the evidence of fraud is before us and asserts that "the admissions of Pack, Kahn and Jett conclusively establish that the only purpose of the Pack-Kahn action was to deprive Sterling Oil of Sterling's federally created right to have the Jett-Chamberlain-Sterling controversy decided in a federal forum." We disagree. As we stated on the first appeal:
 
 
 16
 [T]here was good reason for bringing the second suit in order to assure the plaintiffs therein [Pack, Kahn, and Geo. H. Jett Drilling Company] a day in court in the event that they were not admitted as parties plaintiff in the earlier suit, as indeed they were not. The question is whether they have stated a cause of action against any of the defendants whose presence in the litigation would destroy complete diversity of citizenship of the parties. We think they have.
 
 
 17
 362 F.2d at 729-730. The now apparent fact that Chamberlain controlled both pieces of litigation is cause for serious concern, but it does not constitute "clear and persuasive evidence" of fraud. Chamberlain had been given authority to act for Pack, Kahn, and Jett and he was justified in bringing a suit in their names to protect their interests.
 
 B. Quasi In Rem Jurisdiction
 
 18
 Sterling Oil's second ground for seeking an injunction as "necessary in aid of [the federal court's] jurisdiction" is its argument that the Jett-Chamberlain action is quasi in rem and that once the federal court took jurisdiction of that case, it was required to protect it by enjoining a state action which raised identical issues. See generally Pacific Indemnity Co. v. Acel Delivery Service, Inc., 5 Cir. 1970, 432 F.2d 952, cert. denied, 1971, 401 U.S. 955, 91 S.Ct. 973, 28 L.Ed.2d 238. Sterling Oil contends that the action is one to settle title to and rights in certain property, that it asked for an accounting in its counterclaim and later has requested specific performance, and that the whole agreement gave it an equitable lien and imposed a constructive trust on Jett and Chamberlain.
 
 
 19
 To dispose of this quasi in rem contention we need only look to the first appeal in this case and to the assertions of the parties before the court at that time. Although the legal questions there centered on the indispensability of certain parties, much of the argument was directed at determining whether the Jett-Chamberlain action was in rem, quasi in rem, or in personam. In an attempt to defeat the arguments as to indispensability of parties, Sterling argued throughout its briefs that the Sterling Agreement was carefully drawn to make the obligations of Jett and Chamberlain personal obligations, that the Agreement was a mere contract to pay money and transfer oil royalties, and that the Agreement clearly stated that it did not operate as a conveyance to Sterling of any interest in the leases or any other estate in land. Jett and Chamberlain, on the other hand, maintained that the controversy unquestionably concerned an interest in land. From this Sterling now argues that, because we stated in the first appeal that the Sterling Agreement bound Jett and Chamberlain to convey "certain 'overriding royalties' and other interests in properties," we rejected its earlier contentions that the action was in personam, 362 F.2d at 727; thus it concludes that it is not precluded from adopting a new argument after its initial argument was rejected. We find little merit in this contention.
 
 
 20
 There is nothing in our first opinion which would indicate that we rejected the in personam theory advanced by Sterling Oil. Sterling Oil argues that we held that the Sterling Agreement purported to convey interests in real property; actually we held that the Agreement bound Jett and Chamberlain to convey such interests at some later date. If our earlier decision can be read to have any effect on the question of the status of the Jett-Chamberlain action, it would be that the opinion is more consistent with Sterling Oil's first line of argument than it is with Sterling Oil's new position. It is inconceivable that this court would have allowed the Pack-Kahn action to be remanded if, after extensive argument on the quasi in rem-in personam argument, it in fact had concluded that the action was one which required the exclusive jurisdiction of the federal court. Sterling Oil has argued one position before this court and now, after obtaining the benefit of that position, has advanced an admittedly inconsistent position in hopes of prevailing again. We hold that it is precluded from utilizing such a tactic. Cf. Scarano v. Central R. Co., 3 Cir. 1953, 203 F.2d 510; Iselin v. La Coste, 5 Cir. 1945, 147 F.2d 791; Texas Co. v. Gulf Refining Co., 5 Cir. 1928, 26 F.2d 394, cert. denied, 278 U.S. 625, 49 S.Ct. 27, 73 L.Ed. 545.
 
 C. Partial Summary Judgment
 
 21
 As an alternative basis for reversal Sterling Oil argues that, because of a partial summary judgment entered by the district court on November 3, 1966, in the Jett-Chamberlain action, an injunction should have been issued "to protect or effectuate its judgment." We hold that this judgment is not within the scope of the third exception of section 2283.
 
 
 22
 Jett and Chamberlain's original complaint alleged that the Sterling Agreement was null and void because Sterling Oil had not qualified to do business in Alabama at the time the Agreement was entered into. Alternatively, they asked for a declaratory judgment construing the contract favorably to them. On August 19, 1966, Sterling Oil moved for a partial summary judgment on the sole question whether it had qualified to do business at the proper time; it also asked for a "declaratory judgment that the Sterling Agreement is a valid existing agreement . . . ." This motion was granted November 3, 1966, and the court's order found the Agreement to be a "valid enforceable and subsisting agreement." That order, however, was supplemented by a new order on November 15, 1966, which explained that the court's earlier order was only intended to dispose of the question of Sterling's qualifying to do business. The November 15 order continued:
 
 
 23
 in using such language [as to the validity of the Agreement] the court had no intention of determining the meaning or enforceability vel non of any of the specific provisions of the Sterling Agreement which are the subject of controversy between the parties to this cause.
 
 
 24
 If any doubt remained as to the limited scope of this order, it was removed on March 11, 1971, when the district court denied Sterling Oil's motion, based on the partial summary judgment, to strike amendments to Jett and Chamberlain's complaint and answer to counter-claim. These amendments, filed April 17, 1968, questioned the validity of the Sterling Agreement on grounds of fraud, misrepresentation, duress, and business compulsion. Thus, the district court refused to give its 1966 order final res judicata effect on the question of the validity of the Sterling Agreement. That it was not necessary to protect this "judgment" by an injunction is also apparent from the state of the record on July 16, 1971, the date the injunction was denied. At that time both the district court and the state court had found the Sterling Agreement valid insofar as Sterling Oil's having qualified to do business was concerned. No conflict existed and, in the absence of any other reason for protecting the partial summary judgment, the district court had rendered no judgment that warranted protection under section 2283.D. Pendency of Two Suits
 
 
 25
 Finally, Sterling Oil contends that, under Alabama law, the pendency of both a state and a federal case involving the same parties and issues is vexatious as a matter of law and argues that this entitles it to an injunction of the state proceeding.[11] Regardless of the Alabama law on this question, it is clear under federal law that the dual court structure of our federal system creates a situation in which the same case can be heard simultaneously in a state court and a federal court. See e. g., Kline v. Burke Construction Co., 1922, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226. We recognized that this was such a case in our first opinion. 362 F.2d at 730. Since the determination whether a federal injunction of a state proceeding should issue under section 2283 must be made by reference to federal law, we conclude that two such actions can proceed concurrently so long as it has not been demonstrated that either is in rem or quasi in rem.
 
 
 26
 Taken separately, none of Sterling Oil's theories properly entitle it to an injunction against the state proceeding; even when viewed collectively they fail to establish the impropriety of the state action necessary to overcome the restrictive construction placed on section 2283 by Atlantic C.L.R.R., supra.[12]
 
 III. 72-1637
 
 27
 Sterling Oil has advanced only one argument as to why, with the Jett-Chamberlain action stayed and the Pack-Kahn action free to proceed, a final judgment in the latter should not be res judicata in the former. It contends that the district court considered the July 10, 1971, order of the state court res judicata and that the parties agreed on July 14, 1971, to raise no "new issues" in the state court if that action were allowed to continue. This statement, while correct, does not aid Sterling Oil. The July 10 state court order was virtually identical to the November 15, 1966, partial summary judgment in the district court, and dealt with Sterling Oil's having qualified to do business. While withdrawn by the state court's final judgment, it was not contradicted; instead the Sterling Agreement was invalidated on grounds which had already been incorporated in the federal pleadings prior to July 14, 1971 and which were therefore not "new" in terms of the parties' agreement. Because it was conceded that the Pack-Kahn action raised issues which were identical to those raised in the Jett-Chamberlain action, we hold that the district court correctly granted summary judgment in the Jett-Chamberlain action based on the final state judgment in the Pack-Kahn action.
 
 
 28
 Number 71-2745 is dismissed in part and affirmed in part, and number 72-1637 is affirmed.
 
 
 
 [1]
 The merits of the dispute, to the extent that they concern us, are adequately set out in our 1966 opinion. 362 F.2d 723
 
 
 [2]
 The Sterling Agreement entered into by Jett, Chamberlain, and Sterling Oil attempted to define the interests of these parties in an oil field purchased by Jett and Chamberlain. The Agreement is described in greater detail in 362 F.2d at 727
 
 
 [3]
 Sterling Oil also filed a suit against Jett and Chamberlain in federal court asking for various forms of relief under the Sterling Agreement that amounted to the same relief sought in its counterclaim in the Jett-Chamberlain action
 
 
 [4]
 The term "Chamberlain's group" has reference to the apparent control given Chamberlain over the two related cases by virtually all interested persons, except of course Sterling Oil. This control is apparent from the deposition of Pack, Kahn, and Jett, and from an agreement entered into between Chamberlain, Cornwall, Citronelle Properties, Inc., and The Equity Corporation. See Part II A of this opinion infra
 
 
 [5]
 Sterling Oil also applied for prohibitory relief in the Alabama Supreme Court. After a hearing on April 30, 1971, that application was denied on May 3, 1971
 
 
 [6]
 Sterling Oil later amended its Notice of Appeal to include the district court's order of July 14, 1971, which granted a stay of the federal proceedings. See footnote 12 infra
 
 
 [7]
 The federal action filed by Sterling Oil (see footnote 3 supra) had been consolidated with the Jett-Chamberlain action for trial and was included within the scope of the district court's order granting summary judgment
 
 
 [8]
 28 U.S.C.A. Sec. 2283 provides:
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of it jurisdiction, or to protect or effectuate its judgments.
 
 
 [9]
 Despite indications in the record that some other parties had intended to join as plaintiffs in the Pack-Kahn action, the only named plaintiffs were Pack, Kahn, and Geo. H. Jett Drilling Company, which was controlled 100% by Jett
 
 
 [10]
 This same counsel also apparently prepared and filed the Jett-Chamberlain action, prepared and filed the petitions to intervene in that action, and assisted in the preparation of the answer of several defendants to the Pack-Kahn action. All of these services were billed to Chamberlain
 
 
 [11]
 Sterling Oil cites for this proposition, Watson v. Mobile & O.R.R., 1937, 233 Ala. 690, 173 So. 43, which states that the pendency of the federal case may be pled in abatement in the state action. See also Fegaro v. South Central Bell, 1971, 287 Ala. 407, 252 So.2d 66
 
 
 [12]
 Sterling Oil has also attempted to attack, by amended notice of appeal in No. 71-2745, the validity of the district court's order of July 14, 1971, staying the Jett-Chamberlain action. See footnote 6 supra. In addition to there being a serious question about whether the order was appealable (see Jackson Brewing Co. v. Clarke, 5 Cir. 1962, 303 F.2d 844, cert. denied, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124), Sterling Oil's amended notice of appeal was filed far beyond the time limit allowed for such notices by Fed.R.App.P. 4(a). The order was entered on July 14, 1971, but the amended notice of appeal was not filed until November 1, 1971. As such this aspect of appeal No. 71-2745 is dismissed
 In its argument on the propriety of this stay order, Sterling Oil made an oblique reference to the Federal Arbitration Act, 9 U.S.C.A. Sec. 1 et seq. To the extent that this argument is addressed to the stay order, the above dismissal disposes of it. If, however, Sterling Oil is arguing that this Act supports in some way its request for an injunction, we need only point out that the Act provides no independent right to a federal forum. See Ballantine Books, Inc. v. Capital Distributing Co., 2 Cir. 1962, 302 F.2d 17; Metro Industrial Painting Corp. v. Terminal Construction Co., 2 Cir. 1961, 287 F.2d 382, cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24; Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2 Cir. 1959, 271 F.2d 402, cert. granted, 1960, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, petition for cert. dismissed per stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37.