**ZAPATA GULF MARINE CORPORATION, etc.**

v.

**PUERTO RICO MARITIME SHIPPING AUTHORITY, et al.**

**Civ. A. No. 86–2911.**

United States District Court,
E.D. Louisiana.

Jan. 5, 1990.

Joseph N. Mole and Ned Kohnke, Lemle & Kelleher, New Orleans, La., for plaintiff.

Dando B. Cellini, J. Forrest Hinton and Alexander McIntyre, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendant TMT.

Rutledge C. Clement, Jr., Amelia J. Williams Koch and Robert S. Zuckerman, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant Sea–Land Service, Inc.

## ORDER AND REASONS

MENTZ, District Judge.

The Court addresses herein the issue of whether to apply judicial estoppel to prevent plaintiff, Zapata Gulf Marine Corporation (Zapata), from asserting a position in this proceeding that is contrary to a position previously taken by American Caribe Lines, Inc. (AmCar) in proceedings before the Interstate Commerce Commission (ICC) on challenges by the Puerto Rico Maritime Shipping Authority (PRMSA) and Sea–Land Service, Inc. (Sea–Land) to its tariff. Zapata, who stands in AmCar's shoes as AmCar's assignee, seeks to recover damages sustained by Catco, Ltd. (Catco) on the theory that Catco was the alter ego of AmCar. In their Motion for Rehearing and/or Reconsideration of Motion for Partial Summary Judgment, defendants argue that Zapata should be judicially estopped

from asserting the alter ego theory because AmCar took a contrary position in the ICC proceedings. As Zapata can recover Catco's damages only if Catco was AmCar's alter ego, application of judicial estoppel will result in dismissal of Zapata's claim for damages sustained by Catco.

One of the three major issues considered by the ICC on Sea–Land's and PRMSA's challenge to AmCar's tariff was the status of the named shipper, Catco, including whether Catco was the alter ego of the carrier, AmCar, and as a result, operating in violation of the Interstate Commerce Act. In response to the petitions of PRMSA and Sea–Land for suspension and investigation of AmCar's tariff, AmCar responded in a letter dated June 22, 1984, that "Catco is a legitimate business entity, wholly separate and distinct from AmCar." In AmCar's petition to terminate the investigation, AmCar stated

In its response to the petitions of Sea–Land and PRMSA, AmCar refuted all allegations that AmCar's or Eller's relationship with Catco is in any respect improper or unlawful. AmCar established by affidavit that the allegations of PRMSA and Sea–Land which are largely irrelevant and speculative, are also false. Thus, AmCar established that there are no common officers, directors, employees or shareholders between AmCar or Eller on the one hand, and Catco on the other, and that Catco is nothing more than a customer of AmCar like any other shipper.

. . . . .

AmCar and Catco are separate, unaffiliated companies.... Thus, AmCar argued to the ICC that Catco was not its alter ego and that any argument to the contrary was "false;" whereas in the case at bar, Zapata takes the position that Catco is AmCar's alter ego. These positions are diametrically opposed; if one is true, then the other is false. Zapata does not claim that the initial position was taken as a result of mistake, inadvertence, or fraud. There is no apparent reason for the change in position other than self-interest. Deposition testimony

reveals that the persons involved with Am-Car and Catco believe that separate existence was necessary for ICC approval of AmCar's tariff. In the case at bar, the only way Zapata can recover damages sustained by Catco is if Catco was AmCar's alter ego.

▮▮▮ The doctrine of judicial estoppel precludes a party in a legal proceeding from asserting a position that is contrary to a position taken by that party in the same or a prior proceeding The doctrine is used to avoid damage to the integrity of the judicial process from the perception of inconsistent results. Thus, judicial estoppel applies only where the prior position was successfully maintained. *See, e.g., Moore v. United Services Automobile Association*, 808 F.2d 1147, 1153 n. 6 (5th Cir.1987) (citing *Edwards v. Aetna Life Insurance Company*, 690 F.2d 595, 599 (6th Cir.1982); *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980) ("judicial estoppel should not be applied if no judicial body has been led astray"); *USLIFE Corporation v. U.S. Life Insurance Company*, 560 F.Supp. 1302, 1305 (N.D.Tex.1983)). The prior success standard is not precise and may be difficult to apply where there are no factual findings with respect to the prior position.

There can be no doubt that AmCar prevailed in the proceedings before the ICC inasmuch as the ICC granted AmCar's petition to discontinue the investigation. However, the ICC did not make a factual finding adopting or rejecting AmCar's position that Catco was a separate, unaffiliated company. Although the ICC's internal memorandum indicates that there were many "unanswered questions" with respect to Catco's status, due in part to AmCar's failure to fully respond to the protestants' accusations, the ICC discontinued the investigation. In its decision of August 22, 1984, the ICC stated in pertinent part: "[W]e believe that protestants' allegations are largely matters of speculation offering insufficient indication of probable unlaw-

fulness to warrant continuation of the investigation." [1]

Notwithstanding the ICC's failure to address the merits of the alter ego issue, there can be no serious question that Am-Car was successful in its denial of Catco's alter ego status. In this respect, the case at bar is similar to *Jett v. Zink*, 474 F.2d 149, 154–55 (5th Cir.), *cert. denied sub. nom., Sterling Oil of Oklahoma, Inc. v. Chamberlain*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973). In *Jett*, Sterling Oil raised an admittedly inconsistent position with one previously taken before the same court. After Sterling Oil removed the case from state court, the plaintiff sought to add certain non-diverse parties as plaintiffs and in anticipation that they would be added, also sought a remand. The parties' arguments focused on whether the non-diverse parties were indispensable. Sterling Oil argued, among other things, that they were not indispensable because the action was *in personam*. The Fifth Circuit affirmed the district court's denial of both the addition of the non-diverse parties and the remand. In a subsequent attempt to obtain a permanent injunction of a state court action raising identical issues, Sterling Oil argued that the federal suit was *quasi in rem* thereby justifying the injunction as necessary to protect the federal court's jurisdiction. Sterling Oil argued that this inconsistent position was not improperly asserted because the court rejected its prior position that the action was *in personam*. The Fifth Circuit admitted that the exact scope of its opinion on the first appeal was unclear and did not address the status of the action as *in personam, in rem,* or *quasi in rem,* but did decide that the non-diverse parties were not indispensable. The court found that there was nothing in its first opinion which would indicate that it rejected the *in personam* theory.

> If our earlier decision can be read to have any effect on the question of the status of the ... action, it would be that the opinion is more consistent with Sterling Oil's first line of argument than it is

1. The ICC's internal memorandum also indicates that the investigation was discontinued for the additional reason that the expense of a for-

mal investigation could not be justified in view of the fact that the protestants would suffer no harm from AmCar's method of operation.

**750**

with Sterling Oil's new position.... Sterling Oil has argued one position before this court and now, after obtaining the benefit of that position, has advanced an admittedly inconsistent position in the hopes of prevailing again. We hold that it is precluded from utilizing such a tactic.

*Id.* 474 F.2d at 155.

Similarly, the ICC did not reject AmCar's position denying alter ego status, and its decision to terminate the investigation is more consistent with AmCar's prior position than it is with Zapata's current position. Had AmCar admitted alter ego status, as Zapata has done in this proceeding, it is unlikely that the ICC would have found the protestants' allegations to be "largely matters of speculation." Indeed, AmCar's success lies in the fact that it obtained a discontinuance of the ICC investigation. The effect of the ICC's ruling permitted the Catco device. Thus, AmCar benefited from its prior position. If this Court were to accept Zapata's position that Catco was AmCar's alter ego, then the perception will be that either this Court or the ICC has been led astray. Under these circumstances, the equities in favor of judicial estoppel are substantially increased. *See USLIFE,* 560 F.Supp. at 1306.

 Contrary to Zapata's argument, judicial estoppel does not require privity, reliance, or prejudice. This is because judicial estoppel is not concerned with the relationship between the parties, but with the integrity of the judicial process, which may be injured by inconsistent positions regardless of privity, reliance, or prejudice. *See Edwards,* 690 F.2d at 598; *USLIFE,* 560 F.Supp. at 1305. For the same reason, the innocence or culpability of the party urging judicial estoppel is irrelevant. The doctrine applies equally to positions taken in quasi-judicial administrative proceedings as it does in courts of law. *See e.g., Muellner v. Mars, Inc.,* 714 F.Supp. 351, 355 (N.D.Ill. 1989); *Long Island Lighting Company v. Transamerica Delaval,* 646 F.Supp. 1442, 1447 (S.D.N.Y.1986).

Accordingly, the Court finds as a matter of law that Zapata is judicially estopped from asserting that Catco is AmCar's alter ego, and Zapata's claim for damages sustained by Catco must be dismissed. This ruling renders moot defendants' argument that Catco was an illegal enterprise and hence precluded from recovering damages under the antitrust laws. Zapata still has a damage claim for the profits AmCar would have earned but for the alleged antitrust violations. Thus, application of judicial estoppel here will not undermine the public policy favoring private actions as a deterrent to antitrust violators.

Accordingly,

IT IS ORDERED that defendants' Motion for Rehearing and/or Reconsideration of Motion for Partial Summary Judgment is GRANTED, dismissing plaintiff's claim for damages sustained by Catco, Ltd.