**COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, Plaintiff,**

v.

**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, Defendant.**

**C.A. No. 3:92–3619–19.**

United States District Court, D. South Carolina, Columbia Division.

March 16, 1994.

Michael H. Quinn, Theodore D. Willard, Jr., Quinn, Arndt, Patterson & McIntosh; Carl B. Epps, III, John E. Cuttino, Turner, Padget, Graham & Laney, P.A., of Columbia, SC; and William H. Needle, Lawrence K. Nodine, and Nagendra Setty, Needle and Rosenberg, P.C., Atlanta, GA, for plaintiff.

Wilburn Brewer, Jr., Val H. Stieglitz, III, Nexsen, Pruet, Jacobs & Pollard, Columbia, SC, and James F. Vaughan, George M. Hopkins, and Scott A. Horstemeyer, Hopkins & Thomas, Atlanta, GA, for defendant.

### *ORDER*

SHEDD, District Judge.

Plaintiff has filed this action seeking declaratory and injunctive relief concerning its federally registered servicemark "THE LEADER IN PAYROLL MARKETING." This matter is now before the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for resolution of plaintiff's motion for partial summary judgment as to its first cause of action, which seeks a declaration that its use of the servicemark is not actionable as false advertising under the Lanham Act; and as to defendant's first, second, fourth, and fifth counterclaims, which respectively assert claims for violations of the Lanham Act, the Georgia Uniform Deceptive Trade Practices Act, the Georgia Fair Business Practices Act of 1975, and the South Carolina Unfair Trade Practices Act. In each of these counterclaims, defendant contends (at a minimum) that plaintiff's use of the servicemark constitutes false and deceptive advertising. After carefully reviewing the record and the controlling legal principles, the Court concludes that the motion should be granted for the reasons set forth below.[1]

---

1. With respect to defendant's Lanham Act counterclaim, there was some discussion at the hearing whether plaintiff has used the servicemark for purposes other than advertising and, following the hearing, the parties submitted letters to the Court which addressed that issue. The Court notes that there is no provision in the Local Rules for such post-argument submission. Regardless, the Court declines to resolve this issue because the motion and memoranda appear to be directed not to factual matters but, instead, to a matter of statutory interpretation. The parties have not adequately briefed or otherwise presented the factual assertions which are encompassed within the Lanham Act claim. Therefore, the Court will rule only on the precise issue present-

## I

Summary judgment is not "a disfavored procedural shortcut, but rather [it is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting *Fed.R.Civ.P.* 1). Summary judgment "provides a procedure with which to bypass a trial when the fact resolution process of trial would prove to be of no use in the disposition of the case." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1315 (4th Cir.1993). When the moving party properly supports its motion showing that it is entitled to judgment as a matter of law, the party opposing the motion must present "affirmative evidence" to establish a genuine dispute of material fact which is necessary to defeat the summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257–58, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court is required to view any permissible inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *Moore v. Winebrenner,* 927 F.2d 1312, 1313 (4th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). If, after viewing the evidence in the light most favorable to the non-moving party, the Court finds that the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial, the Court must grant summary judgment against that party. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186–87, 111 L.Ed.2d 695 (1990). "In short, the summary judgment procedure allows the court to forecast the proof at trial to determine whether consequential facts are in dispute, and if not, to resolve the case without a trial." *Mitchell,* 12 F.3d at 1316.[2]

## II

Defendant's first counterclaim is for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which *inter alia* provides for a civil action for false advertising. Specifically, Section 43(a) states in pertinent part:

Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,

.    .    .    .    .

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Plaintiff argues that it is entitled to summary judgment on this counterclaim because the McCarran–Ferguson Insurance Regulation Act ("the McCarran–Ferguson Act"), 15 U.S.C. § 1011 *et seq.,* prohibits the application of Section 43(a) of the Lanham Act to regulate advertising by insurance companies.

### A.

It is not necessary for the Court to detail in exhaustive fashion the history and purpose underlying the McCarran–Ferguson Act as the Supreme Court has done so many times. *See, e.g., United States Dept. of Treasury v. Fabe,* — U.S. ——, ——, 113 S.Ct. 2202, 2207, 124 L.Ed.2d 449 (1993); *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 217–31, 99 S.Ct. 1067, 1076–83, 59 L.Ed.2d 261 (1979); *S.E.C. v. National Securities, Inc.,* 393 U.S. 453, 457–460, 89 S.Ct.

---

ed in the memoranda—whether defendant may pursue its false advertising claim under Section 43(a) of the Lanham Act. As to what type of conduct constitutes "advertising," the Court leaves that issue for another day.

2. The parties have presented matters of statutory construction which may be properly resolved by summary judgment. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993).

564, 567–68, 21 L.Ed.2d 668 (1969). Briefly stated, Congress enacted the McCarran–Ferguson Act in response to the opinion in *United States v. South–Eastern Underwriters Association,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), in which the Supreme Court departed from the then-accepted principle that the issuance of an insurance policy is not a transaction of commerce subject to federal regulation. Prior to *South–Eastern Underwriters,* "the States enjoyed a virtually exclusive domain over the insurance industry." *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 539, 98 S.Ct. 2923, 2928, 57 L.Ed.2d 932 (1978). The decision in *South–Eastern Underwriters* "provoked widespread concern that the States would no longer be able to engage in taxation or effective regulation of the insurance industry." *Id.*

In Section 1 of the McCarran–Ferguson Act, Congress declared the underlying policy to be that:

> [T]he continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011. Congress' primary purpose in enacting the McCarran–Ferguson Act "was to preserve state regulation of the activities of insurance companies, as it existed before the *South–Eastern Underwriters* case." *Royal Drug,* 440 U.S. at 218 n. 18, 99 S.Ct. at 1077 n. 18. Thus, Congress mandated in Section 2(a) that "[t]he business of insurance ... shall be subject to the laws of the several States which relate to the regulation or taxation of such business," 15 U.S.C. § 1012(a); and, in the first clause of Section 2(b), Congress provided:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b). This provision of the McCarran–Ferguson Act "overturned" normal rules of federal pre-emption:

> Ordinarily a federal law supersedes any inconsistent state law. The first clause of § 2(b) reverses this by imposing what is, in effect, a clear-statement rule, a rule that state laws "for the purpose of regulating the business of insurance" do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise.

*Fabe,* —— U.S. at ——, 113 S.Ct. at 2211. Congress' secondary purpose in enacting the McCarran–Ferguson Act was "to give insurance companies only a limited exemption from the antitrust laws." *Royal Drug,* 440 U.S. at 218 n. 18, 99 S.Ct. at 1077 n. 18. In this respect, Congress legislated in the second clause of Section 2(b) that after June 30, 1948, the Sherman Act, the Clayton Act, and the Federal Trade Commission Act "shall be applicable to the business of insurance to the extent that such business is not regulated by State law." 15 U.S.C. § 1012(b).

■ The parties agree that the precise issue presented—whether the McCarran–Ferguson Act prohibits a claim of false advertising against an insurance company under Section 43(a) of the Lanham Act—is a novel one. The Court recognizes that one federal district court has held that the McCarran–Ferguson Act does not preclude claims of servicemark infringement and unfair competition under the Lanham Act. *See USLIFE Corp. v. U.S. Life Ins. Co.,* 560 F.Supp. 1302, 1306–08 (N.D.Tex.1983). In addition, the Fifth Circuit has stated in dicta that the McCarran–Ferguson Act does not preclude a claim of infringement under the Lanham Act. *See Sears, Roebuck & Co. v. All States Life Ins. Co.,* 246 F.2d 161, 172 (5th Cir.), *cert. denied,* 355 U.S. 894, 78 S.Ct. 268, 2 L.Ed.2d 192 (1957).[3]

In order for plaintiff's assertion of the McCarran–Ferguson Act as a defense to the first counterclaim to succeed, the Court must find: (1) Section 43(a) of the Lanham Act does not specifically relate to the "business of

---

3. The court in *USLIFE Corp.* recognized that this statement is dicta and noted that *Sears* "can serve as little guidance today" based on later Supreme Court cases which have addressed the McCarran–Ferguson Act. 560 F.Supp. at 1306 n. 5.

insurance," (2) a state law enacted for the purpose of preventing false advertising by insurance companies is a law enacted "for the purpose of regulating the business of insurance," (3) Georgia and South Carolina—the states involved herein—have enacted such laws, and (4) application of Section 43(a) of the Lanham Act would invalidate, impair, or supersede the state legislation. *Fabe,* —— U.S. at ——, 113 S.Ct. at 2208. Plaintiff, citing Section 33–6–4 of the Official Code of Laws of Georgia and Section 38–57–50 of the Code of Laws of South Carolina, contends that both Georgia and South Carolina have enacted laws which specifically regulate false advertising by insurance companies and that these statutes were enacted "for the purpose of regulating the business of insurance" within the meaning of Section 2(b). In opposition, defendant asserts that advertising is not the "business of insurance" for purposes of the McCarran–Ferguson Act.

Defendant conceded at oral argument that Section 43(a) of the Lanham Act does not specifically relate to the business of insurance and that the application of Section 43(a) of the Lanham Act in this case would invalidate, impair, or supersede both Ga.Code Ann. § 33–6–4 and S.C.Code Ann. § 38–57–50. Further, there is no dispute that these state statutes are in effect. Therefore, in order to resolve plaintiff's assertion of the McCarran–Ferguson defense, the Court must decide whether Ga.Code Ann. § 33–6–4 and S.C.Code Ann. § 38–57–50 were enacted "for the purpose of regulating the business of insurance." If so, then the McCarran–Ferguson Act precludes the application of Section 43(a) of the Lanham Act.

**B.**

Georgia Code Section 33–6–4 provides in pertinent part:

The following acts or practices are deemed unfair methods of competition and unfair and deceptive acts or practices in the business of insurance: (1) Making, publishing, disseminating, circulating, or placing before the public ... an advertisement ... containing any assertion ... with respect to the business of insurance ... which is untrue, deceptive, or misleading.

Similarly, South Carolina Code Section 38–57–50 provides, in pertinent part:

No person may make ... an advertisement ... with respect to the business of insurance ... which is untrue, deceptive, or misleading.

With respect to whether these statutes were enacted "for the purpose of regulating the business of insurance," plaintiff argues in its brief that the opinion of the Supreme Court in *F.T.C. v. National Casualty Company,* 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958), is dispositive.

In *National Casualty,* the Supreme Court addressed the issue of whether the McCarran–Ferguson Act prohibits the Federal Trade Commission from regulating false, misleading, or deceptive advertising practices by insurance companies in states which have statutes that prohibit unfair or deceptive insurance practices. Relying on the antitrust exemption in the second clause of Section 2(b), *see* 357 U.S. at 563 n. 3, 78 S.Ct. at 1261 n. 3; the Supreme Court held that the McCarran–Ferguson Act "withdrew from the Federal Trade Commission the authority to regulate advertising practices in those States which are regulating those practices under their own laws." 357 U.S. at 563, 78 S.Ct. at 1261. Stated otherwise, the Supreme Court held that advertising practices by insurance companies are included within the meaning of the phrase "business of insurance" as that phrase is used in the antitrust exemption of Section 2(b).

Defendant contends that the Supreme Court has, in cases subsequent to *National Casualty,* defined the phrase "business of insurance" very narrowly and, under these cases, advertising by insurance companies does not fall within the scope of the McCarran–Ferguson Act. For this proposition, defendant cites the opinions in *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982); *Royal Drug;* and *National Securities.* Defendant argues that in these cases the Supreme Court established three criteria for determining whether an activity constitutes the "business of insurance" and that advertising does not fall within the meaning of the statute

when these criteria are applied.[4] In essence, defendant argues that *National Casualty* has been implicitly overruled and, therefore, the Court should not follow that decision.[5] Defendant has not pointed to any decision in which the viability of *National Casualty* has been questioned. *But cf.* Kennedy, *The McCarran Act: A Limited "Business Of Insurance" Antitrust Exemption Made Ever Narrower—Three Recent Decisions,* 18 Forum 528, —(March 1983) ("it is doubtful that the selling and advertising of policies ... now can be deemed part of the section 2(b) 'business of insurance' antitrust exemption").

Initially, the Court notes that neither *National Casualty* nor the *Pireno* criteria are controlling.[6] Unlike this case, in which plaintiff seeks to invoke the first clause of Section 2(b), *National Casualty* and *Pireno* were based on the antitrust exemption in the second clause of Section 2(b). In *Fabe,* the Supreme Court recognized the distinction between cases which involve the scope of the antitrust exemption in the second clause of Section 2(b), and cases which fall within the first clause:

> Both *Royal Drug* and *Pireno* ... involved the scope of the antitrust immunity located in the *second* clause of § 2(b). We deal here with the *first* clause, which is not so narrowly circumscribed. The language of § 2(b) is unambiguous: the first clause commits laws "enacted ... for the purpose of regulating the business of insurance" to the States, while the second clause exempts only "the business of insurance" itself from the antitrust laws. To equate laws "enacted ... for the purpose of regulating the business of insurance" with the "business of insurance" itself ... would be

to read words out of the statute. This we refuse to do.

— U.S. at —––—, 113 S.Ct. at 2209–10 (emphasis in original). In drawing this distinction, the Supreme Court recognized that the first clause "necessarily" encompasses more types of activities than does the second clause. —– U.S. at —, 113 S.Ct. at 2210. The Supreme Court determined that its distinction between the two clauses is consistent with the purposes of the McCarran–Ferguson Act:

> Our plain reading of the McCarran–Ferguson Act also comports with the statute's purpose. As was stated in *Royal Drug,* the first clause of § 2(b) was intended to further Congress' primary objective of granting the States broad regulatory authority over the business of insurance. The second clause accomplishes Congress' secondary goal, which was to carve out only a narrow exemption for "the business of insurance" from the federal antitrust laws.

— U.S. at, —, 113 S.Ct. at 2210. Thus, while *National Casualty* and the *Pireno* criteria are relevant in determining the applicability *vel non* of the antitrust exemption, they are not determinative with respect to the first clause of Section 2(b).[7]

Prior to *Fabe,* the Supreme Court had construed the phrase "for the purpose of regulating the business of insurance" only once. *See Fabe,* — U.S. at —, 113 S.Ct. at 2208. In *National Securities,* a case which involved the first clause of Section 2(b), the Supreme Court stated generally that "[s]tatutes aimed at protecting or regulating this relationship [between insurer and

---

4. The three *"Pireno* criteria" are (1) whether the activity has the effect of spreading a policyholder's risk, (2) whether the activity is an integral part of the policy relationship between the insurer and the insured, and (3) whether the activity is limited to entities within the insurance industry. *Pireno,* 458 U.S. at 129, 102 S.Ct. at 3008.

5. Except in rare circumstances, *see Rowe v. Peyton,* 383 F.2d 709, 714 (4th Cir.1967), *aff'd,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); only the Supreme Court may overrule its precedent, *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983); and until it does, this Court is bound to follow such precedent.

*Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982).

6. In *USLIFE Corp.* the court applied the *Pireno* criteria in ruling that the McCarran–Ferguson Act did not preclude the plaintiff's Lanham Act infringement and unfair competition claims. After *Fabe,* the analysis applied in *USLIFE Corp.* is of questionable validity.

7. In *Fabe,* four Justices dissented, arguing that the *Pireno* criteria are applicable to the determination under the first clause of Section 2(b). —– U.S. at —–––—, 113 S.Ct. at 2215–16.

insured], directly or indirectly, are laws regulating the 'business of insurance' " within the meaning of the first clause. 393 U.S. at 460, 89 S.Ct. at 569. Importantly, the Supreme Court expressly stated that "[t]he selling and advertising of policies" is within the scope of the McCarran–Ferguson Act. 393 U.S. at 460, 89 S.Ct. at 568. The Supreme Court further observed:

> The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they to must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting this relationship, directly or indirectly, are laws regulating the "business of insurance."

*Id.* In *Fabe*, the Supreme Court cited the bulk of this language from *National Securities* and thereafter framed the relevant inquiry as follows:

> The broad category of laws enacted "for the purpose of regulating the business of insurance" consists of laws that possess the "end, intention, or aim" of adjusting, managing, or controlling the business of insurance.

—— U.S. at ——, 113 S.Ct. at 2210 (citation omitted).

The Court concludes that under *National Securities* and *Fabe*, state laws regulating advertising are encompassed within the scope of the first clause of Section 2(b) since advertising clearly appears to the Court to affect the relationship between the insurer and insured. Moreover, as noted, the Supreme Court expressly stated in *National Securities* that advertising by insurance companies is within the scope of the first clause of the McCarran–Ferguson Act. While the Supreme Court did not restate this principle in *Fabe*, there is nothing in that opinion which is inconsistent with, or otherwise calls it into question.[8] Furthermore, without examining whether *National Casualty* has been implicitly overruled as defendant contends, the Court notes that the holding in that case supports this conclusion since, in that case, the Supreme Court found advertising to constitute the "business of insurance" under the more restrictive analysis of the antitrust exemption of Section 2(b). Finally, although not controlling, the Court recognizes that both the Georgia and South Carolina legislatures expressed their purpose in enacting these laws as being the regulation of the business of insurance under the McCarran–Ferguson Act.[9]

Having reached this conclusion, the Court finds that Ga.Code Ann. § 33–6–4 . and S.C.Code Ann. § 38–57–50—which regulate false advertising by insurance companies—are laws enacted "for the purpose of regulating the business of insurance" within the first clause of Section 2(b).[10] Because of the previously noted agreement of the parties concerning the other relevant factors to be examined under *Fabe*, the Court thus concludes that the McCarran–Ferguson Act operates in this case to preempt the Lanham Act, and, therefore, plaintiff is entitled to summary judgment on the first counterclaim.

### III

The above determination also compels summary judgment in favor of plaintiff on its

---

**8.** One commentator, to whom the Supreme Court cited favorably in *Fabe*, has noted that advertising is "so clearly part of the 'business of insurance' that recent opinions see no need to reaffirm this." Howard, *Uncle Sam Versus The Insurance Commissioners: A Multi–Level Approach To Defining The "Business of Insurance" Under The McCarran–Ferguson Act*, 25 Willamette L.Rev. 1 (1989) (cited at —— U.S. at ——, 113 S.Ct. at 2210).

**9.** In both states, the legislative intent in enacting these statutes was to regulate trade practices in the business of insurance in accordance with the McCarran–Ferguson Act. *See* Ga.Code Ann. § 33–6–1; S.C.Code Ann. § 38–57–10.

**10.** The Court recognizes that this ruling is limited to the particular facts of this case since both of the state statutes involved prohibit the same conduct which is prohibited in Section 43(a) of the Lanham Act—false, deceptive, or misleading advertising.

first cause of action, in which plaintiff seeks a declaration that its use of the servicemark "is not actionable false advertising" under the Lanham Act. Therefore, the Court will grant summary judgment in favor of plaintiff on the first cause of action.[11]

## IV

■ Because the parties next briefed defendant's fourth counterclaim, which is for violation of the Georgia Fair Business Practices Act ("GFBPA"), Ga.Code Ann. §§ 10–1–390 et seq.; the Court will now examine the motion as to this claim. Plaintiff argues that it is entitled to summary judgment because only a "consumer" may bring an action under the GFBPA and defendant, not being a "consumer", lacks standing to bring this counterclaim. Alternatively, plaintiff argues that false advertising by insurance companies is exempt from coverage under the GFBPA. Because, as set forth below, the Court accepts this latter argument, it is unnecessary to reach the question of whether defendant has standing under the GFBPA.

In support of its position that false advertising by insurance companies is exempt from the GFBPA, plaintiff relies upon Ga. Code Ann. § 10–1–396, which provides:

Nothing in [the GFBPA] shall apply to: (1) Actions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States....

Plaintiff further relies upon the opinion in *Ferguson v. United Insurance Company of America,* 163 Ga.App. 282, 293 S.E.2d 736, 738 (1982), in which the Georgia Court of Appeals held that "insurance transactions are among those types of transactions which are exempt from the [GFBPA]" because insurance transactions are "specifically authorized and regulated" by the Georgia Insurance Code. The *Ferguson* court noted that its

conclusion was "especially true since the Insurance Code regulates unfair trade practices within the insurance industry, and specifically defines the activity alleged in [the] petition as an unfair or deceptive act or practice." *Id.; see also Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667, 675 (N.D.Ga.1983) (following *Ferguson*).[12] Plaintiff contends that *Ferguson* is applicable here because false advertising by insurance companies is specifically regulated by Ga.Code Ann. § 33–6–4.

Ga.Code Ann. § 33–6–4 declares false advertising by insurance companies to be an unfair trade practice and Ga.Code Ann. §§ 33–6–6 to –9 empower the state insurance commission to regulate insurance industry advertising practices. Therefore, *Ferguson* appears to control this issue. However, defendant primarily attempts to distinguish *Ferguson* by pointing out that in that case, an "insurance transaction" was involved because the plaintiff was suing to recover benefits under a life insurance policy. Defendant argues that there is no "insurance transaction" in this case since advertising is not an activity which is peculiar to the insurance industry. Defendant further argues that the purposes of the GFBPA would not be served if its counterclaim is precluded by Ga.Code Ann. § 10–1–396(1).

The Court is faced with an issue on which the Supreme Court of Georgia has not spoken.[13] Because of this fact, it becomes the duty of this Court to, in effect, sit as a Georgia state court and attempt to determine how the Supreme Court of Georgia would rule under the circumstances presented. *C.I.R. v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). While rarely is this an easy task, the determination in this case is made more difficult by the fact that the Supreme Court of Georgia has not addressed the GFBPA to any significant degree. Absent any significant guidance from the state supreme court,

---

11. Although plaintiff did not request summary judgment as to the first cause of action in the motion, plaintiff indicated at oral argument (without objection) that the first cause of action was necessarily addressed by the motion as it pertains to the first counterclaim.

12. Stated otherwise, these courts read the term "authorized" as being synonymous with the term "regulated."

13. Further, under Ga.Code Ann. § 15–2–9, the Supreme Court of Georgia cannot accept a certified question of law from a United States District Court.

which is the best evidence of what the state law is, the Court must look to other sources:

> In some circumstances, the state's intermediate appellate court decisions "constitute the next best indicia of what state law is," although such decisions "may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise."

*Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 957 F.2d 1153, 1156 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 78, 121 L.Ed.2d 42 (1992) (citations omitted).

The Court finds the opinion in *Ferguson* and, to a lesser extent, the order in *Taylor,* to be persuasive as to the proper interpretation of state law. The *Ferguson* court undertook a considered analysis and specifically construed the scope of the exemption in Ga. Code Ann. § 10–1–396(1). Thus, in light of *Ferguson* (and *Taylor*), the Court concludes that conduct which is specifically regulated in the Insurance Code—including false advertising by insurance companies—is exempt from coverage under the GFBPA.

Defendant's attempt to distinguish *Ferguson* is not persuasive. While defendant makes much of the fact that an "insurance transaction" was involved in that case, Ga. Code Ann. § 10–1–396(1) exempts both "actions or transactions" that are specifically regulated under other state laws. Advertising in the insurance industry is clearly an "action" that is specifically regulated by Ga. Code Ann. § 33–6–4. With respect to defendant's contention that precluding defendant from bringing this counterclaim is contrary to the purpose of the GFBPA, the Court notes that the Georgia Legislature, in creating the exemption, determined that the purpose of the GFBPA is not served by having certain types of conduct fall within its scope. That is not a decision for the Court to question.

In short, the Court concludes that defendant is precluded from bringing its fourth counterclaim as the conduct alleged therein—that is, false advertising by an insurance company—is exempt from coverage under the GFBPA pursuant to Ga.Code Ann. § 10–1–396(1). Therefore, plaintiff is entitled to summary judgment on this counterclaim.

## V

■ Defendant's second counterclaim is for violation of the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), Ga. Code Ann. §§ 10–1–370 *et seq.* Plaintiff makes the same exemption argument with respect to this counterclaim as the Court has previously addressed concerning the GFBPA. In arguing that this claim is barred because unfair trade practices in the business of insurance are exempt from coverage under the GUDTPA, plaintiff relies on Ga.Code Ann. § 10–1–374(a), which provides in pertinent part:

> This part does not apply to:
>
> (1) Conduct in compliance with the orders or rules of or a statute administered by a federal, state, or local governmental agency.

Although *Ferguson* and *Taylor* involve only the GFBPA, plaintiff contends that the analysis in those cases is controlling under the GUDTPA. Defendant argues in opposition that there are no reported Georgia cases in which the business of insurance or the use of a servicemark by an insurance company has been exempted under the GUDTPA. Defendant cites, by way of illustration, the case of *State ex rel. Stratton v. Gurley Motor,* 105 N.M. 803, 737 P.2d 1180, *cert. denied,* 105 N.M. 781, 737 P.2d 893 (1987), for the proposition that conduct which is regulated by the Insurance Code is not exempt from the GUDTPA.

While the language in the GUDTPA exemption codified at Ga.Code Ann. § 10–1–374(a) differs from the corresponding exemption in the GFBPA (*i.e.,* Ga.Code Ann. § 10–1–396(1)), the Court finds no reason to disregard the analysis set forth in *Ferguson.* Therefore, for the reasons expressed *supra* in Part IV, the Court finds that defendant is precluded from bringing the second counterclaim under Ga.Code Ann. § 10–1–374(a). Accordingly, plaintiff is entitled to summary judgment on this counterclaim.

## VI

■ Finally, the Court turns to defendant's fifth counterclaim, in which defendant

asserts that plaintiff's conduct is violative of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C.Code Ann. §§ 39–5–10 *et seq.* Plaintiff contends that defendant is precluded from maintaining this claim because this conduct is exempt from coverage under the SCUTPA.

■ Section 39–5–40(c) provides that the SCUTPA "does not supersede or apply to unfair trade practices covered and regulated under Title 38, Chapter 55, §§ 38–55–10 through 38–55–410." Sections 38–55–10 through 38–55–410 have been recodified at S.C.Code Ann. §§ 38–57–10 through –320.[14] Under Section 38–57–50, false advertising in the insurance industry is specifically regulated as an unfair trade practice in South Carolina. Because Section 38–57–50 and the conduct proscribed therein fall within the exemption from the SCUTPA set forth in Section 39–5–40(c), defendant's fifth counterclaim must fail. Accordingly, the Court will grant summary judgment in favor of plaintiff on this claim.

## VII

Based on the foregoing. the Court hereby **ORDERS** on this the 16th day of March, 1994, at Columbia, South Carolina, that plaintiff's motion for partial summary judgment be **GRANTED** as to its first cause of action, and as to defendant's first, second, fourth, and fifth counterclaims.[15]

14. Under general principles of statutory construction, where, as here, the legislature has made a mistake in a reference in a statute to another statute and the real intent of the legislature is manifest and would be defeated by adherence to the terms of the mistaken reference, a court may disregard the mistaken reference or read it as corrected in order to give effect to the legislative intent. *Curry v. Department of Corrections,* 423 So.2d 584, 585 (Fla.Ct.App.1982).

15. The motion is granted as to the claims relating to the Lanham Act to the extent noted in footnote 1 *supra.*